**Salvador CHIAPPE and Michael Kaufman, Plaintiffs-Appellants,**

**v.**

**STATE PERSONNEL BOARD and The Members thereof, John Barnard, Thornley Wood, Shelby Harper, Ruth Lurie, Lincoln Baca; University of Colorado, Boulder Campus, James Schaeffer, Arthur Ingraham, Defendants-Appellees.**

**No. 79SA63.**

Supreme Court of Colorado, En Banc.

Jan. 12, 1981.

Rehearing Denied Feb. 9, 1981.

Jonathan B. Chase, Boulder, for plaintiffs-appellants.

J. D. MacFarlane, Atty. Gen., Richard F. Hennessey, Deputy Atty. Gen., Mary J. Mullarkey, Sol. Gen., Ann Sayvetz, Asst. Atty. Gen., Denver, for defendants-appellees.

ROVIRA, Justice.

This is an appeal from an order by the Boulder County District Court which dismissed a complaint seeking review of the action of the State Personnel Board upholding the termination of employment of Messrs. Chiappe and Kaufman (appellants). We affirm.

1. The appellants were certified during January 1976 in positions designated as "Food Service Worker A." This position is classified as entailing a "trainee" function. Employees in the class are to work under close supervision until they achieve the "full working level." Their work is described as "routine . . . in preparing and serving food and performing related housekeeping tasks in a kitchen or dining area."

2. There has been no allegation raised here that the no-beard policy violated constitutional equal protection. *But see New York City Transit Authority v. Beazer*, 440 U.S. 568, 99 S.Ct. 1355, 59 L.Ed.2d 587 (1979).

Joint Exhibits 1 and 2 dated February 15, 1971, and August 30, 1973, reflect the "no beard" policy of the Campus Health Inspector and University Sanitarian. Both exhibits refer to Boulder City-County Health Department Regulation # 4 which controls food establishments. Both the Campus Health Inspector and

The appellants were hired as food service workers in the University Memorial Center at the University of Colorado at Boulder in 1974. At the time they were hired each had a beard, and no mention was made of a "no beard" policy as a condition of employment. They did not actually prepare or serve food but worked as "busboys" in areas where food was prepared and served, clearing and busing dirty dishes and cleaning tables. Their job description and classification as employees of the state personnel system entailed the possibility of being required to prepare food.[1]

In May 1976 Arthur Ingraham, who had a degree in hotel and restaurant management and 26 years' experience in food service operations, was hired to manage the food service operations of the University Memorial Center. He decided to implement a hair restraint policy which included a no-beard rule. This policy had been in effect for several years, but it had not been enforced by past management.[2]

Written and oral notice of the new policy was given to appellants by their immediate supervisor. After they refused to shave their beards, they were suspended without pay on June 7, 1976, for seven days and advised that they could return to work during this period if they should change their minds.[3] They were notified that discharge would follow a decision to retain their

University Sanitarian interpreted the regulation to "include beards, which are generally contaminated with staphylococcal bacteria that are transmitted to food via fingers or through direct fallout. Since no workable protection for beards has been successfully employed to keep hair away from hand contamination or from falling out, the elimination of the problem at its source is endorsed."

Mr. Ingraham reinstituted the policy in his belief that it was in keeping with minimum sanitary standards. He also believed that he was entitled to enact higher standards of cleanliness than the minimum in order to insure that the possibility of food contamination could be kept under strict control.

3. In the present appeal, no question is raised regarding the propriety of the hearing procedures followed in implementing the agency's disciplinary actions: (1) suspension and (2) termination. *See Shumate v. State Personnel*

beards. Seven days later they returned to work with beards intact. They met with the University Memorial Center director, reiterated their resolve not to shave, and offered nothing by way of defense or mitigation. The director then advised them orally and in writing that they were terminated from employment.[4]

The appellants appealed their termination, and a hearing was held before a personnel board hearing officer who found that the no-beard policy was "directly concerned with the promotion of clean and sanitary food service activities in the dining facilities ... and as such is directly job related to the food service employees."

The hearing officer upheld the termination, and his decision, on appeal, was affirmed by the State Personnel Board. Subsequently, appellants filed an action for judicial review pursuant to the State Administrative Procedure Act, section 24–4–101 *et seq.*, C.R.S.1973. In a well-reasoned opinion the trial court held that the proper test to be applied in reviewing this food service regulation is whether it was rationally related to a legitimate interest of the state. The court determined that the no-beard policy was not arbitrary because there was a clear relationship between persons who came into contact with food and the danger of staphylococci contamination of food by direct hair fallout or indirect finger contact. It concluded that there was no violation of appellants' federal constitutional rights, that appellants had not been denied their rights as state employees under article XII, section 13, of the Colorado Constitution, and that there was sufficient evidence in the record to support the Board's action.

## I.

In this court the appellants have limited their case to the following argument: (1)

that there is a constitutionally protected "liberty interest" involved in an individual's choice of personal appearance; (2) that constitutional "procedural due process" protections must be provided to one whose liberty interest is subject to state regulation; and (3) that in this case procedural due process requires that the state use the "means least restrictive of liberty interests" to accomplish its legitimate objective of promoting public health and safety. Although we do not disagree with the first two of these propositions, we cannot accept appellants' conclusion that their liberty interests were irrationally restricted by the no-beard policy which was enforced by the University. Instead, we hold that this policy was neither irrational nor arbitrary. Therefore, it was not an impermissible deprivation of the appellants' liberty to forbid their wearing beards while they were food service employees.

### A.

#### *"Liberty Interest"*

The United States Supreme Court has neither created nor discovered any "fundamental" constitutional right in a person's decision to affect a particular grooming standard. *See* Wilkinson and White, *Constitutional Protection for Personal Lifestyles*, 62 *Cornell L. Rev.*, 563 (1977); *L. Tribe, American Constitutional Law* § 15–16 (1978); *J. Nowak, R. Rotunda*, and *J. Young, Constitutional Law* at 416–19, 680–87 (1978). Nevertheless, we have no reason to doubt that the constitution offers protection to the citizenry at large against the state's comprehensive regulation of their personal appearance. *Kelley v. Johnson*, 425 U.S. 238, 96 S.Ct. 1440, 47 L.Ed.2d 708 (1976) (Powell, J., concurring) (Marshall, J.,

*Board*, 34 Colo.App. 393, 528 P.2d 404 (1974). The policy implemented, not its manner of implementation, is here challenged. Its substantive rationality, as applied to the appellants, is argued to be insufficient. The question at issue here is the reasonableness of the agency's policy.

4. The hearing officer of the State Personnel Board assessed the appellants' continued refusal to shave their beards as an ongoing transaction, pursued "in defiance of the agency's reasonable grooming rules." Termination was held to be a reasonable disciplinary sanction under such circumstances.

dissenting).[5] The quality of this asserted liberty is distinguishable from an "individual's freedom of choice with respect to certain basic matters of procreation, marriage and family life." *Kelley v. Johnson, supra,* at 244, 96 S.Ct. at 1444. But an individual's interest in personal appearance seems to come within the broad terms of *U.S. Const.,* amend. XIV, which declares that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." It is in this broad sense that the appellants' constitutional liberty has been imposed upon by the no-beard rule and, they claim, imposed upon in violation of due process of law.[6]

That a constitutional liberty interest has "substantive" content is not a new concept. The due process clause of the United States Constitution has been interpreted as affording individuals substantive as well as procedural protections against irrational governmental restrictions. *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977); *Kelley v. Johnson, supra; Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *see Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). But there is no

uniform nature to the rights that can be asserted as liberty interests under the due process clause. They exist on a rational continuum and may be "ranked in a spectrum of importance," at one end of which are the "great liberties" or fundamental rights and at the other end the "lesser liberties," such as personal standards of grooming.[7] *Karr v. Schmidt, supra,* n. 6, at 615; *Miller v. School District, supra,* n. 6. *See Poe v. Ullman,* 367 U.S. 497, 81 S.Ct. 1752, 6 L.Ed.2d 989 (1961) (Harlan, J., dissenting). Thus our threshold acceptance of the constitutionality of the liberty asserted here does not blind us to the fact that a person's decision to appear as he chooses, regardless of the preferences of others, is of much lesser magnitude than a "fixed star in our constitutional constellation." *Miller v. School District, supra,* n. 6, at 624, *quoting West Virginia State Board of Education v. Barnette,* 319 U.S. 624, 642, 63 S.Ct. 1178, 1187, 87 L.Ed. 1628 (1943). Such a decision is weighed less heavily in due process balancing than those choices which our legal system treats as fundamental.

■ Furthermore, almost any employment, whether in the public or the private sector, "entails some need to comply with

---

**5.** Wilkinson and White, *supra,* at 600–01 point out the "threshold difficulties in subjecting personal appearance to constitutional analysis" which are presented by the Supreme Court's decision in *Kelley v. Johnson, supra*: "The contours of an 'appearance right' remain uncertain; the context for protection of that right, if it exists, has not been delineated; the entire area lacks evaluative criteria." In this case we step beyond the *Kelley* threshold in order to meet the substantive due process question raised by appellants.

**6.** The source of this liberty, apart from questions about its quality, can be variously traced to the First Amendment [*Ham v. South Carolina,* 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973) (Douglas, J., dissenting)], the Ninth Amendment [*Crews v. Cloncs,* 432 F.2d 1259 (7th Cir. 1970)], the equal protection clause of the Fourteenth Amendment [*Massie v. Henry,* 455 F.2d 779 (4th Cir. 1972)], the penumbra of rights emanating from specific constitutional guarantees [*Breen v. Kahl,* 419 F.2d 1034 (7th Cir. 1969), *cert. denied,* 398 U.S. 937, 90 S.Ct. 1836, 26 L.Ed.2d 268 (1970)], or the due process clause of the Fourteenth Amendment [*Bishop v. Colaw,* 450 F.2d 1069 (8th Cir. 1971); *see Kelley v. Johnson, supra* (such a liberty is as-

sumed to exist for purposes of the decision).] *But see Karr v. Schmidt,* 460 F.2d 609 (5th Cir. 1972), *cert. denied,* 409 U.S. 989, 93 S.Ct. 307, 34 L.Ed.2d 256 (1972); *Jacobs v. Kunes,* 541 F.2d 222 (9th Cir. 1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1109, 51 L.Ed.2d 541 (1976).

In the present appeal we adopt an analytical approach somewhat similar to that taken by Justice Stevens, prior to his appointment to the Supreme Court, in *Miller v. School District,* 495 F.2d 658 (7th Cir. 1974): a liberty interest in selecting one's appearance, particularly for a public employee, is of much less significance than other constitutional liberties and is, therefore, subject to ordinary regulation by the government without special judicial oversight.

**7.** This ranking process is and should be the subject of debate. "We must be ever on our guard, lest we erect our prejudices into legal principles." *New State Ice Co. v. Liebman,* 285 U.S. 262, 311, 52 S.Ct. 371, 387, 76 L.Ed. 747 (1932) (Brandeis, J., dissenting). *Compare Lockner v. New York,* 198 U.S. 45, 25 S.Ct. 539, 49 L.Ed. 937 (1905) *with Williamson v. Lee Optical Co.,* 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

an employer's concept of the manners which are suitable to the position." *Miller v. School District, supra,* n.6, at 666 n.29. Such accommodations are inherent in the choice of occupations. The state action involved in regulation of a food service employee's shaving habits conveys no preferred status to the public employee above that of his counterpart who works for a private employer. *Id.* Indeed, the liberty of the public employee—as distinguished from that of the ordinary citizen—may, under some circumstances, be subjected to comprehensive and substantial governmental restrictions which impede activities at the very core of specifically guaranteed constitutional rights. *Civil Service Commission v. National Association of Letter Carriers,* 413 U.S. 548, 93 S.Ct. 2880, 37 L.Ed.2d 796 (1973); *Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973).

> "If such state regulations may survive challenges based on the explicit language of the First Amendment, there is surely even more room for restrictive regulations of state employees where the claim implicates only the more general contours of the substantive liberty interest protected by the Fourteenth Amendment." *Kelley v. Johnson, supra,* 410 U.S. at 245, 96 S.Ct. at 1445.

### B.

### *"Procedural Due Process"*

■ As courts frequently emphasize, "due process" is a flexible concept. It requires the use of orderly procedures that are balanced in such a way as to protect constitutional interests and, at the same time, further legitimate governmental ends. *People v. Taylor,* Colo., 618 P.2d 1127 (1980); *R. McG. v. J. W.,* Colo., 615 P.2d 666 (1980) (Dubofsky, J., specially concurring). Due process calls for the procedural protections which the particular situation demands. *People v. Taylor, supra.*

In the present case, the appellants challenge the application of a health-related policy which was imposed on all workers within their job classification. They argue that they were not allowed to show that their particular beards, their particular jobs, and their particular work habits posed an exception to the "mischief" which the food service sought to control.[8] They had no intention of complying with the rule and clearly expressed this fact before their discharge. They had been given prior notice of the likely consequence of their decision; and they were given an informal hearing before and a formal hearing after their termination, in accordance with unchallenged procedures established by the State Personnel Board.

■ The mere failure of a governmental regulation to contemplate and allow all possible reasonable "exceptions" to its application is not enough to make it irrational in a constitutional sense so long as it does not manifest an arbitrary classification lacking in rational justification. *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).[9] A presumption of administrative regularity and constitutionality attaches to the multitude of personnel decisions made daily by public agencies. *Bishop*

---

8. The appellants raise the hypothetical issue that their beards could have been covered with "nets" comparable to hairnets, that such a means of controlling hair would accomplish the same end as the food service policy and, therefore, the policy is unreasonably overinclusive and thus unconstitutionally arbitrary. There is no indication in the record that the appellants actually proposed such an alternative to their supervisors. But we assume that the appellants' beards were clean and that, while working as busboys, they had minimal contact with food. This assumption does *not* affect the outcome of our due process analysis. *See Miller v. School District, supra,* n. 6.

9. We note that the federal constitutional doctrine of irrebuttable presumptions retains doubtful validity after the Supreme Court's decision in *Weinberger v. Salfi, supra.* Chase, *The Premature Demise of Irrebuttable Presumptions,* 47 *U.Colo.L.Rev.* 653 (1976). Where the liberty deprivation is grievous, however, and where the legislative classification of individuals is seriously demeaning, the doctrine has some life under the Colorado Constitution, art. II, sec. 25. *Denver v. Nielson,* 194 Colo. 407, 572 P.2d 484 (1977).

*v. Wood*, 426 U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Kelley v. Johnson, supra. See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

> "The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions." *Bishop v. Wood, supra*, 426 U.S. at 350, 96 S.Ct. at 2080.

Where the police power is properly exercised, the burden of persuasion is upon the public employee, not the state, to demonstrate that there is no rational connection between the personnel rule and the agency's decision to promote the public interest. *Kelley v. Johnson, supra.* The employee is entitled to a fair process for determining whether he or she violated the substantive conditions of their employment. *Harrah Independent School District v. Martin*, 440 U.S. 194, 99 S.Ct. 1062, 59 L.Ed.2d 248 (1979) (*per curiam*). However, the employee is not entitled to redefine the substance of rules which the public agency adopts in order to accomplish its legitimate objectives. *See id.*; *Kelley v. Johnson, supra.*

■ Procedural due process does not impose the burden of a compelling justification on the state for its restriction of liberty interests which are of less than a fundamental constitutional nature. *Compare Califano v. Aznavorian*, 439 U.S. 170, 99 S.Ct. 471, 58 L.Ed.2d 435 (1978) (regulation of international travel) *with Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (regulation of interstate travel); *compare Smith v. Organization of Foster Families, supra* (regulation of the survival of the "psychological family"), *with Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (regulation of the survival of the "biological family"). The traditional "rational basis" test for substantive due process constitutionality is imposed by reviewing courts when the liberty interest which is regulated is not one of fundamental significance.

Specifically, we must ask here whether the policy enacted by the University of Colorado was so wholly irrational that it may

be branded "arbitrary." *Califano v. Aznavorian, supra; Kelley v. Johnson, supra; Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); *Williamson v. Lee Optical Co., supra*, n. 7.

In assessing the actual procedures which were involved in enforcing and upholding the no-beard policy, we must balance the public and private interests, weighing the costs imposed on the state in adopting alternative procedures against the risks posed to the individual appellants by erroneous decision-making. *Smith v. Organization of Foster Families, supra; Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

## C.
### *"The No-Beard Policy"*

■ In this case the appellants have failed to show that the agency's policy was not rationally related to its objective of providing sanitary food to the public. We find, therefore, that for substantive due process purposes, the policy was rational. We hold that the University of Colorado did not act arbitrarily in enforcing such a policy and in making it a condition of continued employment. The penalty of discharge was job related and was not arbitrarily imposed. *Cf. Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976).

■ The appellants were afforded "the usual elements of procedural due process." *Harrah Independent School District, supra*, 440 U.S. at 197, 99 S.Ct. at 1064. They argue that in addition they are entitled to the unusual protection of an individualized hearing on the substantive rationality of the administrative rule to which they refused to conform. They do not seriously contest the underlying rationale of the policy. Instead, they seek a "heightened" scrutiny of the agency's action in enforcing it. Such a review would permit the hearing officer of the State Personnel Board or perhaps the district court judge to substitute their judgments for that of the agency director who is responsible for administering the government's program and personnel. Procedural due process cannot be stretched this far.

The liberty interest in personal appearance asserted by a public employee is not a basic constitutional right. On the other hand, the public's interest in an efficient and sanitary food service is obvious. The agency's rule does not appreciably restrict the appellants' future employment as busboys if they choose to find such jobs. Moreover, we are not convinced that courts are better suited to exercise the responsibilities of personnel management than the agency director who terminated appellants from their employment. A balancing of the interests of the individual and the state leads us to conclude that the usual standard of review, which looks to the underlying rationale of a legislative rule, was appropriately applied by the district court in this case and that the court properly dismissed the appellants' action for judicial review.

The judgment is affirmed.