Claudine Kay **KIBLER**,
Plaintiff-Appellant,

v.

The **STATE** of Colorado and the Colorado State Board of Nursing,
Defendants-Appellees.

No. 84SA464.

Supreme Court of Colorado,
En Banc.

May 12, 1986.

Joe T. Ulibarri, Denver, for plaintiff-appellant.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Lynn L. Palma, Asst. Atty. Gen., Denver, for defendants-appellees.

QUINN, Chief Justice.

The appellant, Claudine Kay Kibler, appeals from a judgment of the Denver District Court upholding the State Board of Nursing's revocation of her license to practice nursing for violating various provisions of section 12–38–217, 5 C.R.S. (1978), of the Nurse Practice Act. She raises several constitutional challenges to the validity of the revocation order. We affirm the judgment.

## I.

The appellant was employed as a registered nurse in the Colorado State Veterans' Nursing Home in Florence, Colorado, from January 1976 to November 1979. On November 20, 1979, the State Board of Nursing (Board) suspended her license to practice nursing pending a hearing for alleged acts of negligent, willful, and deceptive nursing practices in violation of section 12–38–217(1)(c), (f), and (h), 5 C.R.S. (1978). The charges arose out of conduct occurring between March 1976 and June 1979 and consisted of the following: seventeen allegations of failure to administer medication, treatment, and feedings to patients; fourteen allegations of making false or incor-

rect entries in patients' records regarding the administration of medication, treatment, and feedings; numerous allegations of sleeping on duty; three allegations of removing patients' call bells during the night; two allegations of leaving open the door to the medicine storage room; several allegations of patient abuse, including the forced feeding of one patient and hitting the stumps of two amputees against their bed rails; four allegations of failure to check on patients who were reportedly experiencing difficulties; one allegation of failure to recognize that a patient was not dead and could be resuscitated; numerous allegations of failure to make rounds; and charges of permitting unlicensed nurse's aides to administer medication.

The original hearing on the charges was scheduled for January 29, 1980, but was continued until April 14, 1980, at the request of the appellant's counsel. After conducting an eight-day hearing, the hearing officer issued a ruling on March 17, 1981, finding that the appellant had committed various violations as charged and recommending the revocation of her nursing license. The Board affirmed the hearing officer's findings, with some exceptions,[1] and ordered the revocation of the appellant's license. The appellant unsuccessfully appealed to the district court, which affirmed the Board's decision.

The appellant presents three arguments for reversal: that the provisions of section 12–38–217(1)(c), (f), and (h), 5 C.R.S. (1978), are unconstitutionally vague, both facially and as applied to the circumstances in this case; that the failure of the Board to promulgate standards of nursing conduct and guidelines for discipline deprived the

appellant of due process of law; and that the Board violated the appellant's right to due process by failing to conduct a hearing prior to the summary suspension of her license and by imposing the sanction of revocation without considering or giving her credit for the twenty-one month prerevocation period during which her license was under summary suspension.[2] We find these claims lacking in merit under both the United States and Colorado Constitutions. U.S. Const. amend. XIV; Colo. Const. art. II, § 25.

## II.

The appellant's initial argument is twofold. She first claims that the provisions of section 12–38–217(1)(c), (f), and (h) of the Nurse Practice Act, 5 C.R.S. (1978), are unconstitutionally vague on their face because they fail to delineate with sufficient specificity the nature of the proscribed conduct and further fail to provide adequate standards for the imposition of discipline by the Board. Appellant next argues that the statutory provisions are unconstitutionally vague as applied to her under the circumstances of this case. We conclude that the statutory provisions are sufficiently specific to pass constitutional muster under both a facial and an "as applied" analysis.

## A.

Section 12–38–217(1)(c), (f), and (h), 5 C.R.S. (1978), provides as follows:

The board has the power to revoke, suspend, or refuse to renew any license or to place on probation a licensee upon proof that such person:

1. The hearing officer determined that the appellant's actions in failing to administer ordered gastrostomy tube feedings, sleeping on duty, and permitting unlicensed nurse's aides to administer medications were not inconsistent with the health or safety of the patients and thus were not violations of section 12–38–217(1)(c), 5 C.R.S. (1978). The Board disagreed and ruled that such actions did constitute violations of the statute. In all other respects the Board approved the hearing officer's findings and recommendation of revocation. The record before us

on appeal consists only of the hearing officer's findings and the Board's order of revocation. We have not been furnished a transcript of the evidence presented before the hearing officer.

2. Kibler originally filed her appeal in the court of appeals, but, due to the constitutional challenges to certain sections of the Nurse Practice Act, this court accepted jurisdiction over the appeal in accordance with sections 13–4–102(1)(b) and 13–4–110, 6 C.R.S. (1973).

(c) Has negligently or willfully acted in a manner inconsistent with the health or safety of persons under his care;

\* \* \* \* \* \*

(f) Has negligently or willfully performed nursing services in a manner which fails to meet generally accepted standards for such nursing services;

\* \* \* \* \* \*

(h) Has falsified or in a repeatedly negligent manner made incorrect entries or failed to make essential entries on essential patient records.[3]

Centering her argument of unconstitutional vagueness on such terms as "inconsistent with," "generally accepted standards," "repeatedly negligent manner," and "essential entries," the appellant claims that those terms are subject to any number of interpretations and thus fail to define sufficiently the nature of the proscribed conduct or to provide adequate guidelines for the imposition of discipline.

■ A statute is generally presumed constitutional in the first instance, and the burden is on the party challenging the statute to prove its unconstitutionality beyond a reasonable doubt. *E.g., People v. Velasquez,* 666 P.2d 567 (Colo.1983), *appeal dismissed sub nom. Velasquez v. Colorado,* 465 U.S. 1001, 104 S.Ct. 989, 79 L.Ed.2d 223 (1984); *Colorado Auto and Truck Wreckers v. Department of Revenue,* 618 P.2d 646 (Colo.1980). A statute is unconstitutionally vague if it does not provide a fair warning of the prohibited conduct or if its standards are so ill-defined as to create a danger of arbitrary and capricious enforcement. *E.g., Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31

L.Ed.2d 110 (1972); *Exotic Coins, Inc. v. Beacom,* 699 P.2d 930 (Colo.1985), *appeal dismissed,* —— U.S. ——, 106 S.Ct. 214, 88 L.Ed.2d 214 (1985). A statute, however, need not be drafted with scientific exactitude in order to pass constitutional muster. *LDS, Inc. v. Healy,* 197 Colo. 19, 589 P.2d 490 (1979). Rather, the statutory language must strike a balance between two concerns: it must be sufficiently specific to give fair warning of the prohibited conduct, but must also be sufficiently general to address the problem under varied circumstances and during changing times. *Exotic Coins, Inc.,* 699 P.2d 930; *Colorado Auto and Truck Wreckers,* 618 P.2d 646.

We are satisfied that the statutory terms singled out by the appellant are sufficiently specific to withstand a challenge of facial unconstitutionality. "Inconsistent" actions are those which are logically incompatible with something else—that something else in this case being the health or safety of the patient. *See Webster's Third New International Dictionary* 1144 (1961). An "essential" entry on a patient's chart would be one that is of "importance" to the well-being of the patient. *See Webster's Third New International Dictionary* 777 (1961). The phrase "generally accepted standards" is a common legal concept that refers to norms of conduct applicable to similar persons in like circumstances. *E.g. Craft v. Rice,* 671 S.W.2d 247 (Ky.1984); *see also Restatement (Second) of Torts* § 595 (1977). In the case of a medical professional, such as a nurse, compliance with "generally accepted standards" requires the person to exercise that degree of knowledge, skill, and care exercised by other like

---

**3.** Section 12–38–217(1) was amended in 1980 and is now codified at section 12–38–117(1), 5 C.R.S. (1985). *See* ch. 67, section 1, § 12–38–117(1), 1980 Colo.Sess.Laws 480, 488. Section 12–38–117(1)(c), (f), and (h), 5 C.R.S. (1985), now provides as follows:

  (1) The board has the power to revoke, suspend, withhold, or refuse to renew any license, to place on probation a licensee or temporary license holder, or to issue a letter of admonition to a licensee in accordance with the procedures set forth in subsection (3) of this section, upon proof that such person:

\* \* \* \* \* \*

  (c) Has willfully or negligently acted in a manner inconsistent with the health or safety of persons under his care;

\* \* \* \* \* \*

  (f) Has negligently or willfully practiced nursing in a manner which fails to meet generally accepted standards for such nursing practice;

\* \* \* \* \* \*

  (h) Has falsified or in a negligent manner made incorrect entries or failed to make essential entries on patient records.

professionals in the same or a similar community. *E.g., Barber v. Superior Court of California,* 147 Cal.App.3d 1006, 195 Cal. Rptr. 484 (1983); *Cox v. Lund,* 286 S.C. 410, 334 S.E.2d 116 (1985); *see Lee v. State Board of Dental Examiners,* 654 P.2d 839 (Colo.1982); *Artist v. Butterweck,* 162 Colo. 365, 426 P.2d 559 (1967). When the phrase "repeatedly negligent manner" is viewed in the context of the statute as a whole, the meaning of that phrase is all too obvious. We, therefore, have no hesitation in concluding that the provisions of section 12–38–217(1)(c), (f), and (h) provide adequate notice of the proscribed conduct to those persons licensed to practice nursing in this state.

■ We also are satisfied that the statute provides sufficient guidelines for the imposition of discipline by the Board. A statute is sufficiently specific in this respect if it prescribes the possible penalties that can be imposed for a violation of a statutory proscription. *See generally Duenas-Rodriguez v. Industrial Commission,* 199 Colo. 95, 606 P.2d 437 (1980); *Bennett v. Price,* 167 Colo. 168, 446 P.2d 419 (1968); *Petersen v. Colorado Racing Commission,* 677 P.2d 412 (Colo.App.1983). The sanctions applicable to this case are set out in section 12–38–217(1), 5 C.R.S. (1978), and include revocation, suspension, and probation. Although the statute obviously vests the Board with considerable discretion in the matter of discipline, such discretion serves the useful purpose of permitting the Board to effectively address the varied degrees of culpability that are often associated with acts of professional misconduct and to tailor an appropriate sanction to the

particular facts and circumstances of the case.[4] In our view, the statutory range of sanctions provides adequate standards for the effective implementation of the Board's disciplinary function.

### B.

The appellant also contends that the provisions of section 12–38–217(1)(c), (f), and (h), 5 C.R.S. (1978), are unconstitutionally vague as applied to her under the circumstances of this case. This claim, as we understand it, is that the statute is unconstitutionally vague as applied to the appellant because it suffers from the basic infirmity of facial vagueness. Since the appellant's argument is merely a repetition of her original claim concerning facial invalidity, it must fail for the very same reasons discussed above.[5]

### III.

Relying on our decision in *Elizondo v. Motor Vehicle Division,* 194 Colo. 113, 570 P.2d 518 (1977), and section 12–38–209(1)(c), 5 C.R.S. (1978), the appellant argues that the Board was required to promulgate rules and regulations in order to render more specific the statutory provisions of section 12–38–217(1)(c), (f) and (h), 5 C.R.S. (1978), relating to nursing conduct and the imposition of discipline and that the Board's failure to promulgate such rules and regulations denied her due process of law by failing to provide her with a fair warning of the proscribed conduct and by failing to provide the hearing officer with adequate guidance for the imposition of discipline.[6] We are unpersuaded by this argument.

---

4. The Board's exercise of discretion, of course, is subject to judicial review in the district court, § 24–4–106(2), 10 C.R.S. (1982), and the decision of the district court is further subject to appellate review, § 24–4–106(9), 10 C.R.S. (1982).

5. In light of the fact that the appellant's conduct falls squarely within the prohibitions of section 12–38–217(1)(c), (f), and (h), 5 C.R.S. (1978), we are at a loss to discern any way in which those provisions could be unconstitutionally vague as applied to the circumstances of this case.

6. The appellant also structures her argument on section 12–38–108(1)(j), 5 C.R.S. (1985), which authorizes the Board to promulgate rules and regulations necessary to carry out the purposes of the Nurse Practice Act. This statute, however, is not applicable to this case. It was enacted by the legislature on April 16, 1980, long after the misconduct in issue, and did not become effective until July 1, 1980, two and one-half months after the evidentiary phase of the hearing had concluded. *See* ch. 67, sec. 1, § 12–38–108(1)(j), 1980 Colo.Sess.Laws 480, 483–84, 495. Our analysis of the appellant's

In *Elizondo*, 194 Colo. 113, 570 P.2d 518, we reviewed the constitutionality of section 42-2-123(11), 12 C.R.S. (1973), governing the issuance of a probationary driver's license. The statute authorized the Department of Revenue to issue such a license to one whose regular license had been suspended, but contained no standards to guide the Department in making that decision. Although the Department was authorized by statute to promulgate additional rules and regulations to define more precisely the circumstances to be considered in determining whether or not a probationary license should be issued, it had not exercised that rule-making authority. This court concluded that, while the statutory scheme was not facially infirm, the Department's failure to adopt additional standards constituted a violation of procedural due process as applied to Elizondo's application, since it left the decision whether to issue a probationary license to the unfettered discretion of the hearing officer, and that this constitutional infirmity could be cured only by the proper exercise of the Department's rule-making authority.

■ In contrast to *Elizondo*, we are faced with an entirely different set of circumstances in this case. As explained above, the Nurse Practice Act is sufficiently specific to provide fair warning of the proscribed conduct and adequate guidelines for the imposition of discipline. Moreover, while section 12-38-209(1)(c), 5 C.R.S. (1978), vested the Board with the power to adopt "standards in the form of rules and regulations for practice and patient care for professional nurses," it did not require it to do so. Nor is it constitutionally required that an administrative agency in all cases exercise its rule-making authority.

*Securities and Exchange Commission v. Chenery Corp.*, 332 U.S. 194, 201, 67 S.Ct. 1575, 1579, 91 L.Ed. 1995 (1947); *American Power and Light Co. v. Securities and Exchange Commission*, 329 U.S. 90, 106, 67 S.Ct. 133, 142, 91 L.Ed. 103 (1946). Administrative failure to promulgate rules is notably without constitutional significance when, as here, the statute itself is sufficiently clear and specific and the agency is merely enforcing the plain terms of the statutory proscriptions committed to its charge. *See Equitable Life Mortgage and Realty Investors v. New Jersey Division of Taxation*, 151 N.J.Super. 232, 376 A.2d 966, *certification denied*, 75 N.J. 535, 384 A.2d 514 (1977); *Thomson v. Wyoming In-Stream Flow Committee*, 651 P.2d 778 (Wyo.1982). Simply stated, since section 12-38-217(1), 5 C.R.S. (1978), adequately set forth the proscribed conduct and the possible sanctions for violation of the statutory provisions, the adoption of rules and regulations by the Board was not a constitutional predicate for the valid revocation of the appellant's license under the circumstances of this case.

## IV.

■ The appellant's final contention is that the Board violated her right to due process of law by not providing her with a hearing prior to the summary suspension of her license and by failing to consider and credit her with the twenty-one month period of suspension in the revocation order.[7] We are again unpersuaded by the appellant's claim.

### A.

The appellant first argues that the Board violated her right to procedural due process

claim, therefore, centers on *Elizondo* and section 12-38-209(1)(c), 5 C.R.S. (1978).

7. Although the appellant claims that the Board's failure to take into account or credit her with the twenty-one month period of suspension in revoking her license violated her constitutional right to equal protection of the laws, she has simply joined her equal protection and due process claims as one, without articulating any discrete argument directed to the alleged equal

protection violation. In the absence of any showing by the appellant that the Board's action stemmed from an arbitrary or unreasonable classification, or singled out the appellant for discriminatory treatment not directed to others, we fail to perceive any basis for the appellant's equal protection claim. The issues raised by the appellant, in our view, relate solely to due process of law, and we accordingly employ a due process analysis in answering her contentions.

by failing to hold a hearing prior to the summary suspension of her license. We disagree.

Disciplinary proceedings under the Nurse Practice Act must be conducted by the Board in the manner prescribed by the State Administrative Procedure Act. § 12–38–120(4), 5 C.R.S. (1985). Section 24–4–104(4), 10 C.R.S. (1982), of the State Administrative Procedure Act provides in pertinent part as follows:

> Where the agency has reasonable grounds to believe and finds that the licensee has been guilty of deliberate and willful violation or that the public health, safety, or welfare imperatively requires emergency action and incorporates such findings in its order, it may summarily suspend the license pending proceedings for suspension or revocation which shall be promptly instituted and determined.

Here, the Board conducted an investigation of the charges brought against the appellant and afforded her an opportunity to submit written data and arguments to the Board prior to the summary suspension. Based on the information it gathered, the Board determined that there were reasonable grounds to believe that the appellant's actions constituted an immediate danger to her patients and to the public health, safety, and welfare, thereby requiring emergency action in the form of summary suspension pending a hearing on the merits. The Board incorporated those findings in its suspension order. Because the appellant was afforded the opportunity for a hearing on the merits within a reasonably prompt time after the suspension, we find no violation of her constitutional right to procedural due process. *See Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979); *State Board of Medical Exam-iners v. District Court,* 191 Colo. 158, 551 P.2d 194 (1976).[8]

### B.

■ We also reject the appellant's argument that the Board's failure to consider and credit her with the twenty-one month period of suspension in its revocation order constituted an arbitrary and capricious abuse of discretion in violation of due process of law. The crux of the appellant's argument is that the twenty-one month period of summary suspension amounted to a penalty greater than the maximum authorized by statute, since section 12–38–113(1), 5 C.R.S. (1985), authorizes the filing of an application for reinstatement within one year of the revocation. The question thus becomes whether the appellant had a constitutionally protected interest in reinstatement that required the Board to consider the period of prerevocation suspension in imposing the ultimate sanction of revocation. We conclude that the appellant lacked a constitutionally protected interest in reinstatement.

A constitutionally protected interest in reinstatement requires more than an abstract need or desire for reinstatement on the part of the claimant; instead, it requires a demonstration of an entitlement to reinstatement. *See Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Department of Health v. Donahue,* 690 P.2d 243 (Colo.1984); *Public Service Co. v. Public Utilities Commission,* 653 P.2d 1117 (Colo.1982); *Hurricane v. Kanover, Ltd.,* 651 P.2d 1218 (Colo. 1982). Constitutionally protected interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law...." *Board of Regents,* 408 U.S. at 577, 92 S.Ct. at 2709.

---

**8.** We mention in passing that there appears to have been a considerable delay between the April 14, 1980, suspension hearing and the rendering of a decision by the hearing officer on March 17, 1981. However, the appellant made no complaint about the delay at any time during this period. Moreover, while in her petition for review in the district court the appellant claimed that the delay arguably affected the hearing officer's ability to recall and determine questions of witness credibility, she has never argued that the delay violated her due process rights to a prompt hearing. The only issue properly before us, therefore, is whether the appellant's due process rights were violated by the failure of the Board to conduct a presuspension hearing.

**538**

Section 12–38–113(1), 5 C.R.S. (1985), refutes the notion that the appellant had an entitlement to reinstatement in this case. That section provides as follows:

The board may refuse to issue a license or temporary license to practice as a nurse to any applicant who has had a license to engage in the practice of nursing or any health care occupation revoked by any legally authorized board. The board may require any such applicant to pass a written examination as provided in section 12–38–110 subsequent to a one-year waiting period after such revocation as a prerequisite to licensure. This subsection (1) in no way interferes with the authority of the board to revoke a license.

This statute obviously reposes discretion in the Board to refuse a license to one whose previously existing license to practice nursing has been revoked and does not create a constitutionally protected entitlement to reinstatement. The Board's failure to consider the twenty-one month period of prerevocation suspension, therefore, did not violate the appellant's right to due process of law.

The judgment is affirmed.