COLORADO SOCIETY OF COMMUNITY AND INSTITUTIONAL PSYCHOLOGISTS, INC., a Colorado nonprofit corporation; Richard Aldrich; Ernest L. Aragon; Leo Paul Arguello; Diane Glass Bails; Nancy K. Buckley; Brenda Kay Byers; John Regan Connor; Prudencio Aranbula Cosyleon; Robert M. Crowley; David T. Daniel; Irene M. Elmer; Anthony Raymond Gradisar; Michael Hnatiow, Jr., Ph.D.; David Dennis Holt; William Alexander Howard; Robert James; Leo John Keller II; Robert Gary Kepplinger; Frank C. Lee; Edward Joseph Lemonie, Jr., Ed.D.; Mike Mares, Jr.; Richard Allen Marr, Ed.D.; SeEtta R. Moss; William Chauncey Muse; Patricia Donice Neal; John S. Pickup; Nefeli H. Schneider; Larry Dean Seley; Wallace Ellis Smith, Ph.D.; Wayne Austin Smyer; Ingo Stange; Curtis Franklin Stensrude, Ph.D.; Janice E. Temple; Curtis B. Tuffin, Plaintiffs-Appellees,

v.

Richard D. LAMM, in his official capacity as Governor of Colorado; the Colorado Department of Regulatory Agencies; Wellington E. Webb, in his official capacity as Executive Director of the Department of Regulatory Agencies; and Colorado State Board of Psychologist Examiners, in its official capacity, Defendants-Appellants.

No. 85SA149.

Supreme Court of Colorado,
En Banc.

July 20, 1987.

Rehearing Denied Sept. 8, 1987.

Sheila H. Meer, P.C., Sheila H. Meer, Denver, for plaintiffs-appellees.

Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Cathy H. Greer, Asst. Atty. Gen., Denver, for defendants-appellants.

ERICKSON, Justice.

The Governor of Colorado, the Colorado State Board of Psychologist Examiners, and the Colorado Department of Regulatory Agencies and its executive director (the defendants), appeal from a judgment of the Denver District Court holding that legislation eliminating certain exemptions to the licensing requirements imposed upon the practice of psychology violated the due process and equal protection guarantees of the United States and Colorado Constitutions. U.S. Const. amend. XIV, § 1; Colo. Const. art. II, § 25. We reverse. In our view, the amendments to section 12-43-114, 5 C.R.S. (1985), bear a rational relationship to a legitimate governmental interest, and the plaintiffs do not have a constitutionally protected property right to practice psychology under repealed exemptions to the licensing act.

I.

Sections 12-43-101 to -120, 5 C.R.S. (1985) (the Act), regulate the practice of psychology in the State of Colorado. The Act provides for the licensing of psychologists practicing in Colorado, and makes it a misdemeanor for unlicensed persons to practice psychology or to represent themselves as psychologists. §§ 12-43-108, -109, -112, 5 C.R.S. (1985). The Act establishes a State Board of Psychologist Examiners (Board), which administers the Act, and authorizes the Board to examine applicants for licensure and to deny, withhold, or approve the issuance of a license to practice psychology. § 12-43-104, 5 C.R.S. (1985). The Board is empowered to conduct disciplinary proceedings, and, for cause, may revoke or suspend the license of any psychologist subject to the Act. §§ 12-43-104, -111, 5 C.R.S. (1985). The Act also provides a series of exemptions from its application. § 12-43-114, 5 C.R.S. (1985).

In 1981, the General Assembly enacted comprehensive amendments to the Act. The amendments replaced the concept of certification with one of licensure, and repealed certain exceptions to the requirements of the Act. *See* Ch. 141, sec. 19(2),

§ 12–43–114, 1981 Colo.Sess.Laws 786, 798. The repealed exemptions included:

1. An exception for the activities, services and use of an official title on the part of a person in the employ of a federal, state, county, or municipal agency, insofar as the activities, services, and use of an official title are a part of the duties of his position with the agency, institution, private agency or business, or a private agency or business in which the psychological services performed are required by a salaried position, if the private agency or business does not charge a fee for such services;

2. An exception for the employment of a person by a private nonprofit agency exempt from federal tax under section 501(c)(3) of the Internal Revenue Code of 1954;

3. An exception for the employment of a person certified according to the provisions of the Act by a person who is licensed to practice medicine and who has been certified by the American board of psychiatry and neurology; and

4. An exception for a person employed by a corporation, partnership or business association, if the psychological services performed are limited to the employees of the corporation, partnership or business association.

§ 12–43–114(1)(a), (3), 5 C.R.S. (1978).[1]

In addition, the General Assembly in 1981 created new exemptions from the Act for (1) out-of-state licensed psychologists engaged in a limited Colorado practice, and (2) qualified out-of-state psychologists who are recruited by public agencies or nonprofit organizations, and who are approved for licensure within one year of establishing Colorado residency. § 12–43–114(7), (8), 5 C.R.S. (1985).[2] The 1981 amendments also provided exemptions for certain counselors, school psychologists, ministers, priests, or rabbis who do not hold themselves out as psychologists. § 12–43–114(9), (10), 5 C.R.S. (1985).[3]

1. The repealed exemptions provided:
    (1) Nothing in this article shall be construed to limit:
    (a) The activities, services, and use of an official title on the part of a person in the employ of a federal, state, county, or municipal agency, or of other political subdivisions or any educational institution chartered by the state, insofar as such activities, services, and use of an official title are a part of the duties of his office or position with such agency, institution, private agency or business, or a private agency or business in which the psychological services performed are the requirement of a salaried position, if such private agency or business does not charge a fee for such services; or the employment of a person certified according to this article by a private non-profit agency exempt from federal income tax under section 501(c)(3) of the "Internal Revenue Code of 1954," as amended, or the corresponding provision of any future United States internal revenue law; or the employment of a person certified according to this article by a person licensed to practice medicine who has been certified by the American board of psychiatry and neurology....
    (3) Any person employed by a corporation, partnership, or business association need not be certified under the provisions of this article if the psychological services performed are limited to the employees of such corporation, partnership, or business association.
    § 12–43–114(1)(a), (3), 5 C.R.S. (1978).

2. Section 12–43–114(7), (8), 5 C.R.S. (1985), provides:

    (7) A person who resides out of state who is currently licensed or certified as a psychologist in that state is not subject to the provisions of this article as to such activities and services performed in this state if the activities and services are within his customary area of practice, do not exceed twenty days per year in the state of Colorado, are not otherwise in violation of this article, and the public is informed of the limited nature of his activities and services and that he is not licensed as a psychologist in this state.

    (8) Out-of-state candidates with qualifications and experience sufficient for licensure under this article may be recruited for positions as psychologists in the employ of federal, state, county, and municipal agencies, or of private nonprofit agencies exempt from federal income tax under section 501(c)(3) of the "Internal Revenue Code of 1954," if such persons are approved for licensure by the board within one year of establishing residency in the state of Colorado, and if their activities and services are limited to their duties in the employ of said agencies.

3. Section 12–43–114(9), (10), 5 C.R.S. (1985), provides:

    (9) The activities and services of any person holding a master's or doctoral level degree from a regionally accredited university in counseling, counseling and guidance, psychology, educational psychology, marriage and family counseling, pastoral counseling, rehabilitation counseling, or school psychology

In 1982, the General Assembly again amended the Act, and reenacted a limited exemption for nonlicensed persons employed by a public agency as of June 1, 1982. *See* Ch. 53, sec. 1, § 12–43–114(11), 1982 Colo.Sess.Laws 264. The exemption provides:

> The use of the title psychologist may be continued by a nonlicensed person who, as of July 1, 1982, is employed by a federal, state, county, or municipal agency or by other political subdivisions or any educational institution chartered by the state, but only so long as such person remains in the employment of the same institution or agency and only in the course of conducting duties for such agency or institution.

§ 12–43–114(11), 5 C.R.S. (1985).

In response to the 1981 and 1982 amendments to the Act, the Colorado Society of Community and Institutional Psychologists, Inc., and thirty-four individual plaintiffs brought suit in Denver District Court challenging the constitutionality of the amendments. Each individual plaintiff alleged an exemption from the provisions of the Act prior to its amendment in 1981 and claimed to have been injured by their current inability to hold themselves out as psychologists or to practice psychology. The plaintiffs sought an order enjoining enforcement of the amended Act, and declaring their right either to continue practicing psychology without a license, or to take the test for licensure without meeting the requirements of the Act.

After a seven-day trial, the court entered judgment in the plaintiffs' favor on March 7, 1984. The court found, as a matter of law, that the Act as amended was unconstitutional on its face and as applied to the plaintiffs. The court concluded: "There is no possible application of the amendments which will safeguard the life, health, or welfare for the public of Colorado and guarantee substantive and procedural due process and equal protection to plaintiffs and persons like them." The trial court entered an order enjoining enforcement of the 1981 and 1982 amendments against the plaintiffs and all others similarly situated, and requiring that the plaintiffs be restored to the jobs and employment status they enjoyed prior to the adoption of the amendments. The trial court also awarded attorney fees and costs to the plaintiffs pursuant to 42 U.S.C. §§ 1983, 1988 (1982).

The defendants appealed, *see* section 13–4–102(1)(b), 6 C.R.S. (1973), and asserted: (1) that the Act, as amended, is constitutional on its face and as applied; (2) that the trial court exceeded its jurisdiction by granting relief to "similarly situated" persons not parties to the suit; (3) that the relief granted was too broad; and (4) that the state-employed plaintiffs failed to exhaust their administrative remedies.[4] Because we conclude that the Act, as amended, is constitutional, we do not consider the defendants' remaining contentions.

## II.

▮ The substantive guarantees of the due process clauses of the United States

---

are not subject to the provisions of this article, provided that:

(a) Such person does not hold himself out to the public by any title or description incorporating the words "psychologist," "psychological," "psychology," or any other term implying training, experience, or expertise in psychology, excepting persons certified as school psychologists by the department of education, who may properly use the title "school psychologist," but only in their capacity as a school employee; and

(b) Such activities are limited to those specific skills for which the person has received regionally accredited training and supervision.

(10) Nothing in this article shall restrict a duly ordained minister, priest, or rabbi from carrying out his ministerial responsibilities

while functioning in his ministerial capacity, within a recognized religious organization and serving the spiritual needs of its constituency, provided he does not hold himself out to the public by any title or description incorporating the words "psychologist," "psychological," "psychology," or other term implying training, experience, or expertise in psychology.

4. The defendants also assert that the trial court erred by certifying its judgment as final pursuant to C.R.C.P. 54(b) prior to entering an award of attorneys' fees and costs. The defendants' contention is moot, because the trial court has entered a final order regarding attorneys' fees and costs, and all aspects of the trial of this case have been concluded.

and Colorado Constitutions require that legislation bear a rational relationship to a legitimate end of government. *Chiappe v. State Personnel Board*, 622 P.2d 527 (Colo.1981); *People ex rel. Losavio v. J.L.*, 195 Colo. 494, 580 P.2d 23 (1978); J. Nowak, R. Rotunda, & J. Young, *Constitutional Law* 443 (2d ed. 1983). Similarly, where a legislative classification neither draws a distinction based on a suspect class, nor impinges upon a fundamental right, the Equal Protection Clause of the fourteenth amendment to the United States Constitution requires only that the court determine whether the classification bears a rational relationship to a permissible governmental purpose.[5] *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2516, 49 L.Ed.2d 511 (1976); *Branson v. City of Denver*, 707 P.2d 338, 340 (Colo. 1985); *Torres v. Portillos*, 638 P.2d 274, 276 (Colo.1981); J. Nowak, R. Rotunda, & J. Young, *Constitutional Law* 591 (2d ed. 1983). A presumption exists that statutes are constitutional, and the party challenging a statute must prove its unconstitutionality beyond a reasonable doubt. *Kibler v. State*, 718 P.2d 531, 534 (Colo.1986); *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 214 (Colo.1984); *People ex rel. City of Arvada v. Nissen*, 650 P.2d 547, 550 (Colo.1982).

▪ The due process and equal protection guarantees of the United States Constitution do not pose significant restraints on the government's ability to act in areas of economic or social welfare. J. Nowak, R. Rotunda, & J. Young, *Constitutional Law* 448 (2d ed. 1983). A challenged governmental act involving economic or social matters will be struck down only if no reasonably conceivable set of facts could establish a rational relationship between the act and a legitimate end of government. *Id.* at 450. Significantly, the United States Supreme Court, with one exception, has rejected every due process or equal protection challenge to economic legislation since 1937. *Id.* at 447. The lone exception, *Morey v. Doud*, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), was overruled in *City of New Orleans v. Dukes*, 427 U.S. 297, 306, 96 S.Ct. 2513, 2518, 49 L.Ed.2d 511 (1976).

▪ In this case, the plaintiffs have failed to establish beyond a reasonable doubt that the statutory scheme of licensing exemptions, as well as the General Assembly's repeal of certain exceptions to the Act, violate substantive due process guarantees and deny the plaintiffs equal protection of law. Colorado has a legitimate and substantial interest in prescribing reasonable qualifications for occupations that require special knowledge or skill and affect the public health, welfare, morals, or safety. *See Thompson v. Schmidt*, 601 F.2d 305, 308 (7th Cir.1979). The Due Process and Equal Protection Clauses impose only broad limits on the state's regulation of the conduct of professions, *see Friedman v. Rogers*, 440 U.S. 1, 17, 18 n. 19, 99 S.Ct. 887, 898 n. 19, 59 L.Ed.2d 100 (1979); *Watson v. Maryland*, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910), and it is beyond question that the General Assembly may constitutionally regulate the practice of psychology, *see Pitts v. State Board of Examiners of Psychologists*, 222 Md. 224, 160 A.2d 200 (1960); *Nelles v. Bartlett*, 5 Mich.App. 47, 145 N.W.2d 795 (1966), *appeal dismissed*, 389 U.S. 9, 88 S.Ct. 85, 19 L.Ed.2d 9 (1967); *National Psychological Association For Psychoanalysis, Inc. v. University of New York*, 8 N.Y.2d 197, 203 N.Y.S.2d 821, 168 N.E.2d 649 (1960), *appeal dismissed*, 365 U.S. 298, 81 S.Ct. 691, 5 L.Ed.2d 688 (1961); *cf. Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889) (state may exact from those practicing medicine assurances that they possess a requisite degree of skill and learning); *People v. Painless Parker Dentist*, 85 Colo. 304, 275 P. 928 (state may impose reasonable conditions on the practice of law, medicine, or dentistry), *cert. denied*, 280 U.S. 566 (1929).

▪ The exemptions under which the plaintiffs practiced prior to 1981 were

---

5. The plaintiffs do not contend that the practice of psychology is a fundamental right or that the Act creates a suspect classification. *Cf. Woods v. Holy Cross Hospital*, 591 F.2d 1164, 1173 n. 16 (5th Cir.1979) (regulation of the practice of medicine does not involve a fundamental right or a suspect class for purposes of equal protection analysis).

based on a legislative view that the need for the public protection of licensure or certification is lessened where a psychologist performs services for fellow employees or under the close supervision of a governmental or nonprofit organization. *See Watson v. Maryland*, 218 U.S. 173, 30 S.Ct. 644, 54 L.Ed. 987 (1910). However, the fact that such exemptions were enacted at one time does not compel the conclusion that a licensing act is invalid if the exemptions are eliminated. The mere failure of a governmental regulation to allow all possible and reasonable exceptions to its application is not sufficient to render the regulation unconstitutional. *Chiappe v. State Personnel Board*, 622 P.2d 527, 532 (Colo. 1981). The General Assembly has broad discretion to fashion a licensing scheme that, in its view, protects the public health, safety, welfare, and morals, and we do not sit as a "super legislature" to weigh the propriety of that legislation. *See City of New Orleans v. Dukes*, 427 U.S. 297, 303, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976);

*Ferguson v. Skrupa*, 372 U.S. 726, 731, 83 S.Ct. 1028, 1032, 10 L.Ed.2d 93 (1963). Because we may not substitute our judgment for that of the General Assembly as to the wisdom of the licensing scheme, the plaintiff's disagreement with the soundness of the law has no relevance to its constitutionality, as long as the legislation bears a rational relationship to a legitimate end of government. *National Psychological Association For Psychoanalysis, Inc. v. Univeristy of New York*, 8 N.Y.2d 197, 203 N.Y.S.2d 821, 168 N.E.2d 649 (1960). We are satisfied that the General Assembly's amendments to the Act are rationally related to the legitimate state goal of regulating the practice of psychology to protect the public health, welfare, and safety.[6] The licensing scheme therefore does not offend notions of substantive due process and equal protection.

### III.

■ The plaintiffs also assert that, regardless of the substantive validity of the

---

**6.** At trial, Carletta Cassover, a member of the Colorado State Board of Psychologist Examiners, testified that the Board worked with the General Assembly in promulgating the 1981 amendments to the Act. The Board examined the Act prior to its amendment, and identified issues of concern that had been encountered in the past. The Board then communicated its conclusions to the Colorado Psychological Association, which in turn advised the General Assembly's legislative drafting office.

Although not all of the 1981 amendments were the subject of testimony at trial, Cassover testified that the exemptions for public and nonprofit agencies set forth in subsection (1)(a) of section 12–43–114 were repealed because of a perceived disparity between the patients of licensed private psychologists and the patients of unlicensed institutional psychologists. Cassover stated that many patients who are in need of psychological care are in varying states of emotional disability, and suffer from impaired judgment. These patients may be unable to ascertain their psychologists' qualifications, and those with limited financial resources often are compelled to seek treatment at public agencies, where the staff psychologists may not be subject to the licensing requirements of the Act. Consequently, "those patients who could afford to go for services in the private sector were guaranteed ... a licensed psychologist.... However, those persons who were not able to afford to go to the private sector and went to public agencies, ... [found] no guaranteed level of training or expertise."

Cassover also testified that the exemption set forth in subsection (9) of section 12–43–114 was enacted to permit unlicensed persons with master's level or doctoral degrees to practice in the specific areas in which they were trained, as long as they do not hold themselves out as psychologists. Cassover stated that the Act, by providing that those exempt under subsection (9) could not use the title, "psychologist," preserved the implication of the Act that a psychologist has received a doctoral degree in psychology, has completed two years of post-doctoral supervision, and has passed a test demonstrating a minimal level of competency in the profession.

The plaintiffs argue that the 1982 amendment to the Act, which provided a limited "grandfather" exemption, *see* note 7, *infra,* for persons employed by a public agency on July 1, 1982, demonstrates that the repeal of subsection (1)(a) will not achieve its purpose, because some institutional psychologists will continue to be unlicensed. We disagree. The grandfather clause, which continues only so long as the person remains employed by the public agency, is a rational means of providing a transition from the 1981 repeal of the exemption. The fact that the General Assembly was cognizant of the impact of the 1981 amendments is illustrated by the enactment of the grandfather clause in 1982. Although the 1982 amendment is not the only permissible formulation of a grandfather clause, it is not arbitrary, and does not render the Act, as amended, unconstitutional.

1981 and 1982 amendments to the Act, the amendments violated the plaintiffs' rights to procedural due process by depriving them of a constitutionally protected property interest in the practice of psychology under the repealed exemptions. The plaintiffs contend that the state must redress that deprivation by either (1) enacting a "grandfather" clause permitting those persons exempt from the Act before its amendment to continue practicing psychology,[7] or (2) providing them with a hearing to demonstrate their qualifications to practice psychology. In our opinion the plaintiffs have not established a cognizable property interest to which due process protections attach. Consequently, the state need not provide the plaintiffs with a hearing before prohibiting them from practicing psychology without a license.

### A.

In *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court stated:

> Certain attributes of "property" interests protected by procedural due process emerge from [our prior] decisions. To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims.

*Id.* at 577, 92 S.Ct. at 2709. The Court emphasized that property rights are not created or defined by the Constitution, but "are created and their dimensions are de-

fined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* *See also Leis v. Flynt,* 439 U.S. 438, 441, 99 S.Ct. 698, 700, 58 L.Ed.2d 717 (1979). For example, in *Barry v. Barchi,* 443 U.S. 55, 99 S.Ct. 2642, 61 L.Ed.2d 365 (1979), the Supreme Court held that a horse trainer had a property right in his occupational license, based upon a New York law providing that a license may not be revoked or suspended at the discretion of racing authorities. *Id.* at 64, 99 S.Ct. at 2649. The state law engendered a clear expectation of continued enjoyment in licensed status absent proof of culpable conduct by the trainer. *Id.* at 64 n. 11, 99 S.Ct. at 2649 n. 11. In *Prouty v. Heron,* 127 Colo. 168, 255 P.2d 755 (1953), we held that an engineer *who has been granted an unlimited license by the state* to engage in all aspects of an engineering occupation thereby acquires a valuable right that cannot by statute be denied or abridged except for cause and after a fair and impartial hearing before an unbiased tribunal. *Id.* at 174–75, 255 P.2d at 758. Later, in *State Board of Registration for Professional Engineers v. Antonio,* 159 Colo. 51, 409 P.2d 505 (1966), we reaffirmed that "the right to practice a profession, *once legally granted,* is within the rights protected by the Constitutions of the United States and the State of Colorado...." *Id.* at 58, 409 P.2d at 508 (emphasis added) (citing *Prouty v. Heron,* 127 Colo. at 174–75, 255 P.2d at 758).

However, a constitutionally protected property interest requires more than an abstract need or desire for the right; it requires a demonstration of an entitlement to it. *Public Service Co. v. Public Utility Commission,* 653 P.2d 1117, 1121 (Colo. 1982); *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. In *Kibler v. State,* 718 P.2d 531 (Colo.1986), we held that a nurse did not

---

7. "Grandfather" clauses are special provisions that allow existing practitioners to continue in their professions after the state has regulated the trade for the first time. *See Taylor v. Hayes,* 131 Ill.App.2d 305, 264 N.E.2d 814 (1970). Grandfather clauses are based on a presumption that those who have followed a profession for a period of time have established their qualification to perform the work. *Id.; Watson v. Maryland,* 218 U.S. 173, 177, 30 S.Ct. 644, 646, 54 L.Ed. 987 (1910).

have a constitutionally protected interest in the reinstatement of her professional license. We reviewed the controlling licensing statute, section 12–38–113(1), 5 C.R.S. (1985), and concluded that the statute "reposes discretion in the Board to refuse a license to one whose previously existing license to practice nursing has been revoked and does not create a constitutionally protected entitlement to reinstatement." *Id.* at 538. Similarly, in *Board of Regents v. Roth*, 408 U.S. at 578, 92 S.Ct. at 2709, the Supreme Court held that although a property interest cognizable under the Due Process Clause may be created by a contract between an employee and a state agency, an employment contract that makes no provision for renewal does not support a claim of entitlement to reemployment.

### B.

In this case, the individual plaintiffs have not established an entitlement to practice psychology exempt from the provisions of the Act, but have shown only an inchoate desire to do so. Prior to the Act's amendment in 1981, the plaintiffs practiced psychology under an exception to the valid requirements of licensure and Board supervision applicable to most practicing psychologists. The plaintiffs have not been granted licenses to practice psychology, and the comprehensive statutory protections available in a proceeding to revoke, suspend, or deny a license do not apply to them. *See* § 12–43–111, 5 C.R.S. (1985). Nothing in the Act establishes a continuing, legitimate expectation or entitlement to practice psychology under repealed exemptions to the Act. *Cf. Fox v. Cincinnati*, 104 U.S. (14 Otto) 783, 26 L.Ed. 928 (1881) (where a state leased surplus water in a public canal to private parties, but reserved the right to resume using it for a public purpose, a legislative rescission of the leases does not deprive the lessees of

due process of law); *Nick v. Montana Department of Highways*, 711 P.2d 795 (Mont.1985) (the legislative repeal of a veterans' preference does not violate the due process clause absent proof that the plaintiff was entitled to the preference). Because the plaintiffs have no cognizable property interest in practicing psychology under repealed exemptions to the Act, their due process claim must fail.[8]

Accordingly, the judgment of the district court invalidating the Act as amended is reversed, and the case is remanded for further proceedings consistent with this opinion. As the plaintiffs have not prevailed in this action, the district court's award of attorney's fees and costs also is reversed. *See* 42 U.S.C. § 1988 (1982).

---

**8.** In support of the plaintiffs' claim that they have a property interest in practicing psychology under the repealed exemptions, the plaintiffs cite section 24–4–102(7), 10 C.R.S. (1982), of the State Administrative Procedure Act, which defines a "license" as "the whole or any part of

any agency permit, certificate, registration, charter, membership *or statutory exemption*" (emphasis added). This case involves legislative, not agency, action, and the State Administrative Procedure Act does not apply. *See* § 24–4–102(3), 10 C.R.S. (1986 Supp.).