No. 22145.

Earle L. Bennett *v.* Wayne G. Price, Alex Clark, Jr., and Joseph A. Martise, all members of the Pueblo Civil Service Commission.

(446 P.2d 419)

Decided October 28, 1968.   Rehearing denied November 18, 1968.

Kettelkamp, McGrath and Vento, W. C. Kettelkamp, Jr., for plaintiff in error.

Gordon D. Hinds, for defendants in error.

*En Banc.*

Mr. Justice Kelley delivered the opinion of the Court.

Earle L. Bennett, plaintiff in error, prior to the initiation of these proceedings, had been a police officer of the City of Pueblo for eight years. The defendants in error were, at all times material to this litigation, members of the Civil Service Commission of the City of Pueblo, and will be referred to collectively as the Commission.

Bennett was discharged pursuant to prescribed procedures by the Chief of Police "for violations of Pueblo

Code of Ordinances Sec. 10-2(d) and Sec. 10-11(d)(4)."
This order was appealed by Bennett to the Commission,
which, after a *de novo* hearing, affirmed the order of
the Chief of Police.

After a review under R.C.P. Colo. 106(a)(4), the
decision of the Commission was affirmed by the Dis-
trict Court. The matter is here on writ of error.

Bennett challenges the decision of the Commission
on two grounds, which are set forth in his Summary
of Argument in these words:

"I. That the decision of respondents in discharging
petitioner was arbitrary and capricious.

"II. That said decision was in fact based upon a charge
not properly before the respondents."

A review of the testimony reveals virtually no conflict
—so far as it relates to that which is basic to a consider-
ation of the issues before us. The minor points of dis-
agreement relate primarily to inferences drawn from
the acts of Bennett, which, under the circumstances, we
do not regard as significant to our decision. The admis-
sions in Bennett's testimony are alone sufficient to
support the action of the Commission.

Bennett had been a Pueblo police officer for eight
years. On March 22, 1965, he went to the personnel
department and asked the clerk for permission to see
his file in order to get certain information relating to
a previous in-service injury. Upon examination of the
file he discovered a sealed envelope upon which was
typed, "Do Not Open Unless Authorized To Do So."
He asked the clerk, "Does that apply to me, or not?"
She said, "I do not have authority to open it — I believe
the Civil Service Commission would be the only ones
that could open it." He returned the file to the clerk
and left the personnel office; he stated that he then
decided to return to the personnel office, remove the
envelope from his file, examine the contents, and then
return the envelope to the file. He returned, obtained
his file, removed the envelope, and put it under his

jacket. At this point Donald Hatfield, Director of the Civil Service Commission, and Jones, a police captain, came into the office. Bennett had a friendly conversation with Hatfield, but did not request his permission to open the envelope; instead, he left the office, the envelope still hidden under his jacket. Bennett then went to a parking lot, opened the envelope and discovered that the contents related to a prior complaint made against him by a former captain of the police department. Before he was able to return the envelope to the file — if such was his intention — Captain Jones and Hatfield, who, in the meantime, had discovered the removal of the envelope, confronted him in his car as he was leaving the parking lot; Bennett handed the file to Hatfield. These proceedings were then initiated.

I.

*Alleged Error I:* The decision of respondents in discharging petitioner was arbitrary and capricious.

Bennett concedes that the issue is not what the court would have done had it been the administrative agency, but rather, whether the action taken by the administrative agency was the result of an honest judgment and whether that action was reasonable. He further concedes that action by an administrative agency is not arbitrary merely because the reasonableness of the agency's action is open to a fair difference of opinion, or because there is room for more than one opinion. 2 Am. Jur. 2d *Administrative Law* § 651.

In a legal sense, discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all the circumstances before it being considered. *Rio Grande County v. Lewis,* 28 Colo. 378, 65 P. 51; *Sharon v. Sharon,* 75 Cal. 1, 16 P. 345; *Howard v. Lindmier,* 67 Wyo. 78, 214 P.2d 737.

In determining whether any administrative action is arbitrary, capricious, unreasonable, or an abuse of discretion, it is necessary to look at the functions of the agency involved and the *totality of the factual back-*

ground in which the agency was functioning at the time of the challenged act. In evaluating that action, we must recognize that the primary responsibility for the function under review lies in the administrative agency and not in the courts.

Here we are concerned with the police department and the Civil Service Commission in relation to disciplinary action taken against a police officer growing out of the officer's violation of an ordinance. The penalty was discharge.

The ordinances of the City of Pueblo (Sec. 10-11(c)) authorize any department head (the Chief of Police) to suspend, demote or impose such other reasonable disciplinary action as he may deem advisable, including discharge. Specific procedures are set forth to meet "due process" requirements. These were followed and no question on this score is raised.

Among the six grounds for discipline or discharge (Sec. 10-11(d)) are two on which the Commission relies here. One, "3. Violation of these rules, departmental regulations, general regulations or law." And two, "4. Conduct unbecoming an employee of the City."

Section 10-2(d), relating to personnel records, in pertinent part, after providing what shall be kept as records, provides:

" * * * Individual employees may examine their personnel records at any reasonable time. No personnel records shall be removed from the personnel office except with permission of the Commission or Director."

■ Bennett testified that he was familiar with the ordinances of the city; he had an opportunity to request the permission of the director to open the file or to remove it for examination, but, instead, he elected to remove a part of his file surreptitiously. Knowledge that the removal was wrong can be inferred from the covert manner in which the envelope was removed from the file. He violated the departmental regulations which had been ordained by the city council. Without question,

174

he brought himself within the proscription of ground 3, set forth above. For a police officer to remove a file in the manner followed by Bennett is contrary to the standards of conduct reasonably to be expected of one whose sworn duty is to uphold the law. By so removing the envelope from the file he brought himself within the terms of ground 4, set forth above.

█ The evidence of the violations was sufficient to support disciplinary action and the penalty was within the terms of the controlling law.

█ The ordinance authorized discharge as a suitable penalty for the violations charged and proved. We cannot say under the circumstances here that the penalty bears no reasonable relation to the actions of the plaintiff in error. In *Hawkins v. Hunt,* 113 Colo. 468, 160 P.2d 357, this court aptly stated:

" * * * The disciplinary action may have been more severe than would be imposed by another, but certainly it was within the Manager's power and it became his duty to determine what was proper disciplinary action, * * *"

Bennett, as a further argument, contends, contrary to fact, that since the contents of the manila envelope was a report which he had made, complaining of the conduct of a former police captain, the decision "becomes even more arbitrary, capricious and unreasonable."

He then argues that because the information related to an incident which occurred some two and a half years prior to the one in issue, the police department knew about it and whatever detrimental effect it might have had on his record had long since terminated and there would be no reason for his not intending to return it to his file.

The totality of these contentions is that the contents of the envelope were so nonconsequential that their removal was of no real significance. Consequently, his conduct in removing the envelope was not "unbecoming

an employee," within the contemplation of those terms as used in the ordinance.

Bennett states it this way:

"We believe that * * * 'conduct unbecoming an employee' in Colorado and elsewhere contemplates a serious malfeasance of the job requirements of a civil service employee, or his obligations as a citizen."

In view of Bennett's argument and the serious implications of the disciplinary action upon Bennett, we feel compelled to scrutinize the contents of the envelope. An examination discloses that substantially all of the data relates to the conduct of Bennett on or about August 18, 1962. Regardless of the truth or falsity of the allegations contained in the material taken from the envelope, it is of such a derogatory nature as to Bennett's character that it could have a bearing upon promotions, recommendations, or other personnel action at any time. So, contrary to Bennett's contention that the contents of the envelope related to his complaint as to the conduct of another officer, they, in fact, related to rather serious allegations as to Bennett's own conduct.

The nature of the information in the envelope and the facts surrounding his actions after taking the envelope from the file would be sufficient to support a conclusion that Bennett, contrary to his self-serving statement, did not intend to return the envelope or its contents to his personnel file. In any event, his conduct in removing the envelope from his file in knowing violation of the ordinance is "unbecoming an employee," and particularly an employee who has the responsibility of upholding the dignity of the law by deed and by example. We do not turn our decision upon this point, but, because plaintiff in error saw fit to place so much emphasis upon it, we felt it should be discussed in some detail.

II.

*Alleged Error II*: The decision was in fact based upon a charge not properly before the respondents.

This assignment of error arises out of the testimony of the Chief of Police before the Commission. The Chief of Police stated that he had heard substantially the same evidence in the hearing which he held prior to his order discharging the plaintiff in error. The City Attorney asked him to explain the reason for his decision. The Chief of Police responded:

"The chief reason for my decision of his dismissal is this: I believe — What are other words you wish to use, 'stole,' or 'taken,' without permission? It was a theft, and I don't — don't like any police officer doing any stealing."

Bennett argues that "no charge of stealing had at any time been injected into the notice or the hearing until the testimony of Chief Harper," and the same was not recorded in the reasons for the discharge on the "Personnel Action Form"; that the use of the words "stole" and "theft" demonstrated bias on the part of the Chief of Police and consequently invalidates the whole proceeding.

Categorizing the actions of Bennett in surreptitiously removing the envelope from his file in violation of the ordinance as a "theft" when he allegedly intended, at the time of taking, to return them, may be technically inaccurate, but it is not such that we can say, as a matter of law, constitutes that degree of prejudice necessary to label the Chief's action arbitrary and capricious. In any event, it was merely an expression of an opinion and did not constitute a charge on which the Commission was acting. In view of the total evidence, we hold that the challenged testimony of the Chief of Police did not prejudice the plaintiff in error before the Commission.

The judgment is affirmed.