Eric HARRIS and the Colorado Springs Police Protective Association, Plaintiffs–Appellants,

v.

The CITY OF COLORADO SPRINGS, a municipal corporation, and Lorne C. Kramer, Chief of Police, Defendants–Appellees.

No. 93CA0158.

Colorado Court of Appeals, Div. III.

Dec. 30, 1993.

Thomas L. Kennedy, Colorado Springs, for plaintiffs-appellants.

James G. Colvin, II, City Atty., Thomas J. Marrese, Sr. Litigation Atty., Colorado Springs, for defendants-appellees.

Opinion by Judge METZGER.

Plaintiffs, Eric Harris and the Colorado Springs Police Protective Association (the Association), appeal the summary judgment entered in favor of defendants, City of Colorado Springs and Lorne C. Kramer, Chief of Police. We affirm.

Harris, who was employed by the City of Colorado Springs as a police officer, was involved in a traffic incident while off duty. For this he received two speeding citations. Harris was also ordered to appear and answer questions during an internal affairs investigation.

After advising Harris that any statements he made would not be used in any criminal prosecution, the Police Chief ordered Harris to take a polygraph examination relating to the traffic incident. Harris declined to do so. After a hearing, the City Manager terminated Harris for refusing to obey the Police Chief's order to take the polygraph examination, and this decision was upheld by the Colorado Springs Civil Service Commission.

Plaintiffs later sought a declaratory judgment that polygraph examinations could be ordered only in circumstances in which the off-duty conduct involved was specifically, directly, and narrowly related to the performance of a police officer's official duties. Both parties then filed motions for summary judgment.

They also stipulated that: (1) questions posed to a police officer during an internal affairs investigation in regard to the officer's off-duty conduct must be specifically, directly, and narrowly related to the performance of official duties, and (2) if the questions are specifically, directly, and narrowly related to the performance of official duties, then a police officer could be disciplined for failing to obey an order to take a polygraph examination regarding such questions.

In a thorough and well-reasoned opinion, the trial court determined as a matter of law that Harris' off-duty actions were specifically, directly, and narrowly related to the performance of his official duties. It held:

First and foremost, [Harris' passenger's] admission that they were 'horsing around' with an on-duty officer by the driving behavior here evinced an intent to interfere with the on-duty officer's performance of official duties. Driving at excessive speeds at night, engaging in eluding-type driving, and accelerating around cars in different lanes of traffic can hardly be described as evidence confirming a police officer's fitness to enforce the traffic laws of Colorado. And this is particularly so where, as here, Harris admitted that he had been drinking.

Second, the driving conduct here endangered not only Harris and [his passenger], but also [the police officer] and other pedestrians and drivers. When this incident happened, [the police officer] did *not* know that two police officers were behind these acts, yet Harris and [his passenger] *knew* they were doing these acts to a police officer. Such conduct certainly bears on Harris's fitness for public service.

Third, this is conduct by a sworn police officer whose duty it is to uphold the laws of Colorado. Police officers are by no means to be held to a standard of perfect conduct, yet .they are charged with the performance of what must be the most difficult and dangerous job in public employment. Thus, the standard of their conduct is, by necessity, a high one by virtue of their duties and the respect afforded them as a result of their position in the community. The fact that several officers eventually responded to the scene and the anger and disappointment they obviously felt over Harris's actions, establishes that the deviation from a reasonable standard of care that even police officers would gauge themselves by was apparent here. If line officers and street cops would not close their eyes to this type of conduct by a fellow police officer, the Court can hardly expect the Chief to do likewise.

Plaintiffs contend that the court erred as a matter of law in these rulings. We disagree.

■ While not all off-duty conduct will have a significant effect on a public servant's official duties, off-duty conduct can be the subject of scrutiny. *See Brown v. City of North Kansas City,* 779 S.W.2d 596 (Mo.App. 1989). Thus, as the court stated in *Broderick v. Police Commissioner,* 368 Mass. 33, 330 N.E.2d 199 (1975), the phrase "relating to the performance of official duties" implies more than matters taking place on duty; it extends to matters of and concerning an individual's fitness for public service.

■ The United States Supreme Court articulated the higher standard to which police officers are held as follows: "He is a trustee of the public interest, bearing the burden of great and total responsibility to his public employer." *Gardner v. Broderick,* 392 U.S. 273, 277, 88 S.Ct. 1913, 1917, 20 L.Ed.2d 1082, 1086 (1968). *See also Warrensville Heights v. Jennings,* 58 Ohio St.3d 206, 569 N.E.2d 489 (1991). Any inquiry into private conduct must bear a rational connection to the officer's position as a public servant. *See Gardner v. Broderick, supra; Broderick v. Police Commissioner of Boston, supra.*

■ Colorado law supports the proposition that off-duty police officers have an official duty to take police action when necessary. *See Conley v. Industrial Commission,* 43 Colo.App. 10, 601 P.2d 648 (1979); (although police officer was off-duty, his death arose out of and in the course of his employment because he was killed while directing traffic); *People v. Rael,* 198 Colo. 225, 597 P.2d 584 (1979) (although police officer was finished working for the night and was out of his jurisdiction, he was engaged in the performance of his duties when shot because he was trying to arrest a criminal).

Further, the Colorado Springs Police Department's General Order 602, entitled "Off–Duty Enforcement Action," gives off-duty police officers responsibility to take police ac-·tion on matters that may result in personal injury or extensive damage to property.

■ Here, the passenger in Harris' car admitted that the two were "horsing around" with an on-duty officer. This behavior included driving at high speeds at night, evading the police, accelerating and making quick lane changes in traffic, and generally demonstrating an intent to disrupt the performance of an on-duty officer's duties. The driving conduct also endangered the lives of Harris and his passenger as well as those of the police officer chasing him and other pedestrians and drivers. Under these circumstances, we agree with the trial court that Harris' conduct during this incident bore heavily and directly on his fitness as a police officer to enforce the traffic laws of Colorado.

We note that plaintiffs' brief also includes a general attack on the propriety of the use of polygraphs as a tool in internal affairs investigations. However, the issue whether polygraphs may be used at all in internal affairs investigations was not before the trial court, and thus, we do not address it here. *See Varady v. White,* 42 Colo.App. 389, 595 P.2d 272 (1979).

Judgment affirmed.

PLANK and HUME, JJ., concur.