Clifford CARNEY, Gregory Cook, and Donna Starr–Gimeno, Plaintiffs–Appellees and Cross–Appellants,

and

Kevin Smith, Plaintiff–Appellee,

v.

CIVIL SERVICE COMMISSION, City and County of Denver, Colorado; Kristopher Colley, Christopher Olson, Ellen Realth, Paula Sandoval, and Edward Sullivan, its Commissioners; Paul G. Torres, its Executive Director; Tom Sanchez, Chief of Police, City and County of Denver, Colorado; Fidel "Butch" Montoya, Jr., Manager of Safety, City and County of Denver, Colorado; Patrick Carver; Roger Barker; and Kenneth Chavez, Defendants–Appellants and Cross–Appellees.

No. 00CA0144.

Colorado Court of Appeals, Div. III.

July 19, 2001.

Worstell & Kiesnowski, David L. Worstell, Robert W. Kiesnowski, Jr., Denver, CO, for Plaintiffs–Appellees and Cross–Appellants and Plaintiff–Appellee.

Hall & Evans, L.L.C., Thomas J. Lyons, Malcolm S. Mead, John E. Bolmer, II, Andrew D. Ringel, Denver, CO, for Defendants–Appellants and Cross–Appellees Civil Service Commission, Kristopher Colley, Christopher Olson, Ellen Realth, Paula Sandoval, Edward Sullivan, Paul G. Torres, Tom Sanchez, and Fidel "Butch" Montoya, Jr.

Paul A. Baca, Denver, CO, for Defendants–Appellants and Cross–Appellees Patrick Carver, Roger Barker, and Kenneth Chavez.

Opinion by Judge MARQUEZ.

In this action pursuant to C.R.C.P. 106(a)(4) and C.R.C.P. 57 contesting a civil service examination for the position of lieutenant in the Denver Police Department (Department), defendants, the Civil Service Commission, its Commissioners, its Executive Director, the Chief of Police, and the Manager of Safety (collectively the Commission), appeal a judgment in favor of plaintiffs, Clifford Carney, Gregory Cook, Donna Starr–Gimeno, and Kevin Smith, invalidating a portion of the examination. Patrick Carver, Roger Barker, and Kenneth Chavez (officers), individual defendants who were promoted under the examination, separately appeal the court's decision. Plaintiffs Carney, Cook, and Starr–Gimeno also cross-appeal the court's denial of an award of costs. We affirm in part, reverse in part, and remand with directions.

In 1998, plaintiffs, sergeants in the Department, took a lieutenant promotional examination administered by the Commission. The examination contained five components, including a personnel record evaluation component (PRE) for evaluating each candidate's personnel packet submitted with respect to: (1) disciplinary record; (2) commendations; (3) reliability; and (4) command-related education and experience. The PRE was worth 10 of 100 possible points. The evaluators scored the candidates between .01 and 5 on each dimension of the PRE and then combined those scores for an overall score, utilizing the mechanism of "judgmental integration." The non-PRE components of the test are not challenged here.

Plaintiffs sought review of the examination results pursuant to C.R.C.P. 106(a)(4). The trial court concluded that the PRE portion of the exam was arbitrary and capricious and ordered that the Commission neutralize that component of the exam scores by giving each candidate the same score of 5.

I.   Standard of Review

C.R.C.P. 106(a)(4)(I) requires that the reviewing court decide whether the lower tribunal exceeded its jurisdiction or abused its discretion "based on the evidence in the record before the defendant body or officer."

■   In a C.R.C.P. 106(a)(4) action, a reviewing court must uphold the decision of the governmental body unless there is no competent evidence in the record to support it. "No competent evidence" means that the governmental body's decision is "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Board of County Commissioners v. O'Dell*, 920 P.2d 48, 50 (Colo. 1996).

Because the district court exercises no factfinding authority in such cases, the appellate court engages in the same type of record review as did the trial court. We are not, therefore, bound by any determination made by the trial court, but review the issues presented to that court on a *de novo* basis. *Feldewerth v. Joint School District 28–J*, 3 P.3d 467, 470 (Colo.App.1999).

II.   Timely Complaint

■   The Commission first contends that the trial court did not have jurisdiction to consider plaintiffs' claims regarding the PRE because plaintiffs did not file their challenge within thirty days of the Commission's announcement that the exam would contain a PRE. We disagree.

■   Under C.R.C.P. 106(b), a complaint seeking judicial review pursuant to C.R.C.P. 106(a)(4) must be filed in the district court no later than thirty days after the "final decision" of the tribunal being challenged is rendered. This thirty-day limitations period is jurisdictional and begins to run at the "point of administrative finality," which occurs when "the action complained of is complete," leaving "nothing further for the agency to decide." *3 Bar J Homeowners Ass'n v. McMurry*, 967 P.2d 633, 634 (Colo.App.1998)(quoting *Cadnetix Corp. v. City of Boulder*, 807 P.2d 1253, 1254 (Colo.App.1991), and *Baker v. City of Dacono*, 928 P.2d 826, 827 (Colo.App. 1996)). Therefore, the issue here is when the "point of administrative finality" occurred for purposes of C.R.C.P. 106(a)(4).

We agree with plaintiffs and conclude that, for purposes of judicial review of actions pursuant to C.R.C.P. 106(a)(4), a final deci-

sion was rendered on August 14, 1998, the date of certification and publication of the eligibility register. That was the "point of administrative finality" when the thirty-day limitations period began to run. Plaintiffs filed their C.R.C.P. 106(a)(4) complaint on September 11, 1998, safely within the thirty-day period.

Before August 14, the Commission was free to modify, amend, withdraw, or delete the PRE component of the exam, and plaintiffs would not have had an opportunity to review it. In short, the injury of which plaintiffs complain was not complete until the exam results were published and certified.

Plaintiffs' action, therefore, was not untimely.

### III.   Mootness

■ The Commission next contends that because two of the plaintiffs since have been promoted to lieutenant and the eligibility list has expired, plaintiffs' claims are moot. We are not persuaded.

■ A case is moot when the relief sought, if granted, would have no practical legal effect. When the conduct sought to be redressed by either declaratory or injunctive relief is peculiar to a particular event that has already occurred, the finality of the event in a manner incapable of repetition moots the controversy. *State Board of Chiropractic Examiners v. Stjernholm,* 935 P.2d 959 (Colo.1997).

■ Two exceptions exist to the mootness doctrine: the court may resolve an otherwise moot case if the matter is one that is capable of repetition yet evading review; and the court may hear a moot case involving issues of great public importance or recurring constitutional violation. *State Board of Chiropractic Examiners v. Stjernholm, supra.*

In our view, both exceptions apply in this case. First, the "capable of repetition yet evading review" exception applies here because, if the issue is not addressed now, it is likely that the Commission will utilize a PRE component in future exams. This conclusion is supported by the fact that a similar PRE component was used in a 1997 exam and subsequently declared invalid by a division of

this court. *Basefsky v. Civil Service Commission,* 985 P.2d 81 (Colo.App.1999).

Second, we consider police department promotional procedures to be a matter of great public importance. The fact that two plaintiffs were subsequently promoted and are no longer subject to the PRE component of the lieutenant exam does not diminish this conclusion. Other officers are affected by the likelihood of its repetition.

Thus, it is appropriate for us to review plaintiffs' challenges to the exam.

### IV.   Objective Grading System

The Commission also contends that the 1998 lieutenant promotional examination satisfied state requirements. We disagree.

### A.

■ Under the Denver City Charter (charter), promotional exams must be "open and competitive" and test only the fitness of the person examined. *Basefsky v. Civil Service Commission, supra.*

■ An examination, although partially subjective, may comply with the charter if it conforms to measures or standards that are sufficiently objective to be challenged and reviewed. *Civil Service Commission v. Frazzini,* 132 Colo. 21, 287 P.2d 433 (1955).

In *Frazzini,* the court noted that the test must comply with the charter and be administered objectively. It determined the examination at issue there complied with the charter. However, the characteristics of that examination were:

> that the candidates were to participate against each other equally before the examiners in answering questions of like character and nature, and that they had equal opportunity in the oral discussion to compete each against the other under like and similar conditions; that the method of grading set up in the examination by the commission was sufficiently objective and definite to be capable of being challenged and reviewed by examiners of equal ability and experience, and that there was suffi-

cient record available for a review by the courts.

*Civil Service Commission v. Frazzini, supra,* 132 Colo. at 35–36, 287 P.2d at 441.

Here, the record presented for review is limited in certain respects. It includes the examinees' scores on the various components of the exam, a rater's syllabus, which explains what the raters were to consider in making their evaluations and allows for the use of "professional judgment," a report of content validity, and compilations of candidates' "professional history," including education/experience, reliability, commendations, and discipline records, personnel evaluation training files, performance evaluation reports, evaluation selection forms, a daily schedule of PREs, and a report of "sustained cases."

This information, however, does not explain how the examiners arrived at the examinees' final scores and does not fulfill the requirements of *Frazzini.* Among other things, the raters, according to the instructions given them, are to use their "professional judgment to integrate the dimension scores for the overall scores."

The record indicates that, unlike in *Frazzini,* the method of grading was not sufficiently objective and definite to be capable of being challenged. Nor is there a sufficient record available for review to determine the basis for the Commission's PRE scoring decisions or whether they were objective. There is no record of how the evaluators reached their decision, what criteria they applied, or whether such criteria, if any, were applied to all applicants equally. The evaluation materials provide no guidance on how to apply judgmental factors uniformly or how the evaluators are to use outside information. Nor do those materials define how information is to be synthesized or provide criteria on how to adjust scores. Additionally, the role of observers is not established.

Further, the "professional judgment" concept makes it impossible for the test to be "challenged and reviewed by examiners of equal ability and experience" and does not allow a "sufficient record available for a review by the courts." It is entirely subjective to the extent that evaluators simply used their professional judgment to integrate the dimension scores for the overall score.

Additionally, the record reveals that the PRE scoring system was inconsistent by any objective measure. Similar candidates were awarded different, seemingly random scores. This was particularly egregious in the evaluation of the discipline, education and experience, and commendation dimensions. In some cases individuals who had more education or commendations received lower scores than candidates who had less education or fewer commendations.

For example, the trial court pointed out that, in the area of discipline, one candidate was fined three days for improper procedure, fined one day for failure to qualify with a weapon, and given an oral reprimand for improper procedure. The candidate received a disciplinary score of 3.5. A second candidate, however, was suspended from the Department for two years, with nine months held in abeyance, and had been convicted of petty theft. Inexplicably, this candidate received a discipline rating of 4.0.

The record also indicates that, in the command-related education and experience dimension of the PRE, one candidate had both a bachelor's and a master's degree and received a 4.6 as his score. Another candidate had the same degrees but received a score of 4.8 on the same section of the PRE. Yet a third candidate who had neither a bachelor's nor master's degree received a score of 4.6 on this section. While experience might account for these variations in scores, the record does not explain how this was to be measured or was applied.

The commendation dimension of the PRE reveals similar inconsistencies. One candidate had approximately 37 official commendations and scored a perfect 5.0. Another candidate had 34 official commendations, but his score was only 4.4. A third candidate had 27 commendations, but his score was 4.6.

The record contains many other such inconsistencies. However, the record does not include any explanations or reasons for such inconsistencies, and this court, therefore, lacks a basis for reviewing them.

Almost three decades ago a division of this court invalidated the concept of "promotional potential" as not being an objectively verifiable standard for purposes of determining whether sergeant candidates should be promoted. *Spickard v. Civil Service Commission*, 31 Colo.App. 450, 505 P.2d 32 (1972). The term "professional judgment" likewise is not sufficiently specific to render an objective result.

Thus, we conclude that the PRE portion of the exam does not conform to the requirements of the charter.

### B.

Additionally, the scoring decisions in the PRE component of the 1998 lieutenant exam suffer from the lack of objectivity noted in the 1997 PRE that a division of this court held invalid in *Basefsky v. Civil Service Commission, supra.*

The exam uses amorphous scoring criteria. "The overall score is not a mathematical average of the four dimension scores, nor are the individual dimension scores given any specific weight. The overall score must be between/equal to the lowest and highest dimension scores."

We conclude that "professional judgment to integrate" is a veiled term for "subjective." It was the overly subjective nature of this component of the 1997 sergeant exam that troubled this court in *Basefsky* and resulted in its invalidation.

We perceive no basis for rejecting the reasoning of *Basefsky* here.

### C.

We also reject defendants' contention that the trial court applied the wrong standard of review.

Defendants' contention, that the court improperly looked for reasons to reject, rather than support, the agency's decision, is not supported by the record. The court explained that the agency's ruling was arbitrary and capricious because of its lack of standards and explanations for examinees' scores. The court used appropriate examples to support its conclusion.

Nor did the trial court fail to follow *Frazzini* by substituting itself as an evaluator by comparing examinees' scores. As stated above, the court's use of score comparisons was simply an illustration derived from information in the administrative record, not from extraneous materials.

Even if the court erred in considering an affidavit in making its determination, such consideration is without effect. *See Interladco, Inc. v. Billings*, 538 P.2d 496 (Colo.App. 1975)(not selected for official publication). For the reasons set forth above, our *de novo* review of the administrative record leads us to the same conclusion as the trial court, without any need to rely upon the affidavit.

### D.

The individual defendants contend that, based upon the record before it, the trial court's findings regarding the use of the PRE were arbitrary and capricious. Based upon the analysis above, we reject this contention.

### V. New Eligibility Register

The Commission also contends that the trial court exceeded its jurisdiction under C.R.C.P. 106 when it directed the creation of the new eligibility register. We agree.

As noted above, C.R.C.P. 106(a)(4) provides that the district court's review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

The authority of the court and the scope of its review in certiorari proceedings is limited to a determination of whether there is any competent evidence to support the decision of the inferior tribunal. *Civil Service Commission v. Doyle*, 162 Colo. 1, 6, 424 P.2d 368, 371 (1967); *see Ross v. Fire and Police Pension Ass'n*, 713 P.2d 1304 (Colo.1986).

Here, the trial court, after finding that the PRE was arbitrary and capricious, directed that candidates be given equal PRE scores, thus neutralizing that component's effect,

and that a new list be established. While the court could determine that the test was invalid, it could not direct the Commission to create a new eligibility list. The determination of a remedy is left to the Commission.

Consequently, establishing a new list was in excess of the trial court's jurisdiction. *See People ex rel. Heckers v. District Court,* 170 Colo. 533, 463 P.2d 310 (1970); *Civil Service Commission v. Doyle,* 162 Colo. 1, 424 P.2d 368 (1967).

## VI. Costs

■ On cross-appeal, plaintiffs Carney, Cook, and Starr–Gimeno contend that the trial court erred when it denied their request for an award of costs as the prevailing parties under § 13–16–111, C.R.S.2000. We agree.

Section 13–16–111 (emphasis added), provides, in part, that: "A plaintiff who obtains judgment or an award of execution in an action brought under subsection (4) or (5) of rule 106(a), C.R.C.P., *shall* recover his costs of suit." The word "shall" in this statute evinces a legislative intent that the prevailing party in a C.R.C.P. 106(a)(4) action must be awarded reasonable costs. *See Boselli Investments, L.L.C. v. Division of Employment,* 975 P.2d 204, 206 (Colo.App.1999).

C.R.C.P. 54(d) also provides for an award of costs, but limits such awards against the state:

> Except when express provision therefor is made either in a statute of this state or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs; but costs against the state of Colorado, its officers or agencies, shall be imposed only to the extent permitted by law.

■ Here, the trial court denied plaintiffs' request for costs as the prevailing parties, holding that such an award is not available against a public entity. However, an award of costs against a municipal corporation is proper, *see Kussman v. City & County of Denver,* 671 P.2d 1000 (Colo.App.1983), *rev'd on other grounds,* 706 P.2d 776 (Colo. 1985), and plaintiffs are entitled to such an award.

## VII. Declarative Relief

■ Carney, Cook, and Starr–Gimeno also contend on cross-appeal that the court erred when it held that their request for declaratory relief under C.R.C.P. 57 was moot because they prevailed on their C.R.C.P. 106(a)(4) claim. We are not persuaded.

A district court acts within its discretion in dismissing a claim for declaratory relief under C.R.C.P. 57 when the review provided under C.R.C.P. 106(a)(4) is complete. *Denver Center for Performing Arts v. Briggs,* 696 P.2d 299 (Colo.1985).

When the complaint suggests that the plaintiffs were seeking declaratory relief as well as injunctive relief, but the trial court and both parties proceeded under C.R.C.P. 106 rather than C.R.C.P. 57, C.R.C.P. 106(a)(4) governs the action. *See Cline v. City of Boulder,* 35 Colo.App. 349, 532 P.2d 770 (1975).

Upon review of plaintiffs' complaint and briefs filed with the district court, we conclude that plaintiffs did not clearly differentiate the relief sought under their claim for declaratory judgment from that sought under their claim for judicial review. Invalidation of the PRE was essentially the relief that plaintiffs sought under both their C.R.C.P. 57 and C.R.C.P. 106 claims.

Therefore, because the trial court under C.R.C.P. 106 granted plaintiffs the relief that they requested, the court correctly held that plaintiffs' C.R.C.P. 57 action was moot. *See Chellsen v. Pena,* 857 P.2d 472 (Colo.App.1992)(declaratory relief under C.R.C.P. 57 is an appropriate means of challenging governmental actions that are *not* subject to review under C.R.C.P. 106(a)(4)).

Accordingly, that portion of the judgment directing that a new eligibility list be established is reversed. The remainder of the judgment is affirmed, and the case is remanded for an award of costs to plaintiffs Carney, Cook and Starr–Gimeno.

Judge NEY and Judge NIETO concur.