The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
March 22, 2018

## 2018COA43

## No. 17CA0235, Johnson v. City & Cty of Denver — Municipal Law — City and County of Denver — Police — Use of Force — Disciplinary Appeals — Standard of Review

In this officer discipline case, a division of the court of appeals holds, as a matter of first impression, that under the standards of review set forth in the Denver City Charter and the Denver Civil Service Commission Rules, the Civil Service Commission must defer to a hearing officer's findings of evidentiary fact and may not rely on a video exception not contained in those standards of review because that exception is contrary to law. The division further holds that the Denver Police Department's use of force policy articulates a single standard for reviewing an officer's use of force and that separate standards do not exist for deadly and non-deadly force. The division finally concludes that while the Civil Service

Commission erred in relying on the video exception to reverse the hearing officer's decision, it nonetheless reached the correct result for two reasons. First, the hearing officer erroneously concluded that separate standards for deadly and non-deadly force existed and erroneously applied that standard. Second, the hearing officer did not properly defer to the Manager of Safety's findings as required by the standard of review applicable to hearing officers and set forth in the Denver Civil Service Commission Rules. Accordingly, the division affirms the district court's judgment affirming the order of discipline.

COLORADO COURT OF APPEALS                                       **2018COA43**

Court of Appeals No. 17CA0235
City and County of Denver District Court No. 15CV31660
Honorable J. Eric Elliff, Judge

Choice Johnson,

Plaintiff-Appellant,

v.

Civil Service Commission of the City and County of Denver; and the City and County of Denver, Colorado,

Defendants-Appellees.

JUDGMENT AFFIRMED

Division VII
Opinion by JUDGE FREYRE
Bernard and Berger, JJ., concur

Announced March 22, 2018

The Lane Law Firm, P.C., Sean J. Lane, Greenwood Village, Colorado, for Plaintiff-Appellant

Kristin M. Bronson, City Attorney, Richard A. Stubbs, Assistant City Attorney, Denver, Colorado, for Defendants-Appellees

¶ 1     In this police discipline case involving an alleged inappropriate use of force, we describe and then apply the standards of review that a hearing officer must apply when reviewing the Denver Police Department's (Department) imposition of discipline and that the Civil Service Commission of the City and County of Denver (Commission) must apply when reviewing the hearing officer's decision.

¶ 2     Choice Johnson, a Denver police officer, appeals the district court's judgment upholding his thirty-day suspension.  He raises two issues on appeal.  He contends, and we agree, that the Commission abused its discretion when it made its own findings of fact from a video recording of the events at issue and when it rejected contrary facts found by the hearing officer.  In doing so, the Commission relied on an exception of its own making — the video exception.  The legality of this video exception presents a novel issue.  We conclude that the video exception is contrary to law because it is not authorized by the standards of review articulated in the Denver City Charter (Charter) and in the Denver Civil Service Commission Rules (Rules), which require the Commission to defer to the hearing officer's findings of evidentiary fact.

1

¶ 3     We further conclude that the "clearly erroneous" standard of review set forth in the Rules requires the hearing officer to defer to the factual findings of the Manager of Safety (MOS)[1] unless they are "contrary to what a reasonable person would conclude from the record as a whole." Denver Civil Serv. Comm'n Rule 12, § 9(B)(1)(c). Because the MOS's findings were not contrary to what a reasonable person would conclude from the record as a whole, the hearing officer erred in substituting her own findings for those of the MOS. Therefore, we affirm the Commission's decision upholding the discipline, albeit on different grounds than those relied on by the district court.[2]

## I.     Factual and Procedural Background

¶ 4     As found by the hearing officer, Officer Johnson worked off-duty at a nightclub in downtown Denver. Matthew Schreiber, his brother Brandon, and others were at the nightclub celebrating Matthew's upcoming marriage. Matthew either fell asleep or passed

---

[1] The Denver Manager of Safety delegated to the Deputy Manager of Safety the responsibility of reviewing the Chief of Police's written command ordering discipline against Officer Johnson. We nevertheless use the shorthand "MOS" to refer to the Deputy Manager of Safety.

[2] We also briefly discuss the City and County of Denver's contention that the hearing officer applied the wrong use of force standard.

out at the bar, and one of the nightclub's bouncers escorted him off the premises. Because Matthew was uncooperative and wished to stay at the bar, the bouncer asked Officer Johnson for assistance. Officer Johnson told Matthew he should take a taxi home. Matthew did not live in Denver and said that he wished to go back into the nightclub and drink water. Officer Johnson warned Matthew that if he returned he would be taken to a detox facility. Matthew then left the premises.

¶ 5 Approximately twenty minutes later, Officer Johnson saw Matthew waiting in line to re-enter the nightclub. He removed Matthew from the line, handcuffed him, and told him that he needed to wait for the detox van to arrive.

¶ 6 A short time later, the other members of Matthew's bachelor party left the nightclub and found Matthew in handcuffs. They confronted Officer Johnson and asked him why Matthew was in handcuffs. In particular, Brandon profanely argued with Officer Johnson.

¶ 7 During the argument, Officer Johnson moved the group under a High Activity Location Observation (HALO) camera, which

3

video-recorded their interactions.[3]  That video revealed that everyone in the group was visibly intoxicated (swaying).  Officer Johnson told the group to break up and leave, but Brandon continued to argue.  Eventually, two parties left, leaving Brandon and another man.[4]  Officer Johnson said he was ordering Brandon to detox and instructed Brandon to turn around to be handcuffed.  Brandon profanely told Officer Johnson not to touch him.  Officer Johnson then suddenly moved toward Brandon, and shoved Brandon with both hands near the neck.  Brandon fell backwards onto some stairs leading up from where they were standing.  Officer Johnson then handcuffed Brandon.

¶ 8      Brandon filed a disciplinary complaint against Officer Johnson.  After an internal investigation, the Chief of Police determined that Officer Johnson had violated Denver Police Department Rules and Regulations RR-306 (inappropriate force policy), and suspended him for thirty days without pay.  The MOS,

---

[3] No audio was recorded.
[4] The video also shows patrons walking by and the nightclub's bouncer in the background, but none of these individuals were part of the events leading to the officer's use of force.

after conducting an independent review of the internal investigation and making detailed findings, approved the discipline imposed.

¶ 9    Officer Johnson then appealed his suspension to a civil service commission hearing officer. After conducting an evidentiary hearing, the hearing officer reversed the Department's suspension for two reasons. She concluded that (1) the MOS had erroneously applied the deadly force rather than the non-deadly force standard to Officer Johnson's conduct; and (2) the MOS had failed to present sufficient evidence to create a reasonable inference that finding a violation of RR-306 was correct.

¶ 10   The City and County of Denver (City) appealed the hearing officer's decision to the Commission. The Commission reversed the hearing officer's decision. It first rejected the notion that two use of force standards existed. It found that the Department was free to impose higher standards than the United States Constitution required and that the MOS had properly applied the use of force standard. The Commission next rejected the hearing officer's conclusion that the discipline was not supported by the record. It found that the video evidence alone, depicting the four minutes leading up to the use of force, contradicted portions of Officer

Johnson's testimony and provided ample evidence to support the thirty-day suspension. Relying on a Commission-created "video exception," it reinstated the Department's discipline.

¶ 11 Officer Johnson then appealed to the district court, which affirmed the Commission's decision.

## II. Analysis

¶ 12 We first address the standards of review applicable to the Commission and the hearing officer and conclude that both misapplied their respective standards of review. We next address and reject Officer Johnson's contention that the Commission legally erred in finding that only one use of force standard exists, despite his assertion that *Tennessee v. Garner*, 471 U.S. 1 (1985), articulates a deadly force standard and *Graham v. Connor*, 490 U.S. 386 (1989), articulates a non-deadly force standard. We finally conclude that despite the Commission's misapplication of its standard of review, its ultimate decision reversing the hearing officer's order was correct, because the hearing officer applied the wrong standard of review to the MOS's decision. In the end, we affirm the order of discipline.

## A. Standard of Review and Applicable Law

¶ 13    C.R.C.P. 106(a)(4) provides as follows:

> Where any governmental body or officer or any lower judicial body exercising judicial or quasi-judicial functions has exceeded its jurisdiction or abused its discretion, and there is no plain, speedy and adequate remedy otherwise provided by law: (I) Review shall be limited to a determination of whether the body or officer has exceeded its jurisdiction or abused its discretion, based on the evidence in the record before the defendant body or officer.

Thus, in a C.R.C.P. 106(a)(4) action, "judicial review of a governmental agency exercising its quasi-judicial role . . . is limited to whether the body has exceeded its jurisdiction or abused its discretion." *City of Commerce City v. Enclave W., Inc.*, 185 P.3d 174, 178 (Colo. 2008). We sit in the same position as the district court when reviewing an agency decision under C.R.C.P. 106(a)(4). *Marshall v. Civil Serv. Comm'n*, 2016 COA 156, ¶ 10; *Roalstad v. City of Lafayette*, 2015 COA 146, ¶ 13. We review de novo whether the agency abused its discretion. *Roalstad,* ¶ 13.

¶ 14    An agency abuses its discretion if its decision is not reasonably supported by any competent evidence in the record, or if the agency has misconstrued or misapplied applicable law.

7

*Freedom Colo. Info., Inc. v. El Paso Cty. Sheriff's Dep't*, 196 P.3d 892, 899-900 (Colo. 2008); *Roalstad*, ¶ 13. An action by an agency is not arbitrary or an abuse of discretion when the reasonableness of the agency's action is open to a fair difference of opinion, or when there is room for more than one opinion. *Bennett v. Price*, 167 Colo. 168, 172, 446 P.2d 419, 420-21 (1968).

¶ 15     "In reviewing the agency's construction, we rely on the basic rules of statutory construction, affording the language of the provisions at issue their ordinary and common sense meaning." *Enclave W., Inc.*, 185 P.3d at 178. "Our primary task in interpreting statutes and municipal enactments is to give effect to the intent of the drafters, which we do by looking to the plain language." *Waste Mgmt. of Colo., Inc. v. City of Commerce City*, 250 P.3d 722, 725 (Colo. App. 2010). If the language of the provision at issue is clear and the intent of the legislative body that enacted it may be discerned with certainty, we may not resort to other rules of statutory interpretation. *Id.* When construing an ordinance in the C.R.C.P. 106(a)(4) context, "we give effect to every word and, if possible, harmonize potentially conflicting provisions." *Enclave W., Inc.*, 185 P.3d at 178.

¶ 16    Our review of the agency's factual, discretionary determinations is more deferential. We must uphold the Commission's decision unless there is no competent evidence in the record to support it. *Carney v. Civil Serv. Comm'n,* 30 P.3d 861, 863 (Colo. App. 2001).[5] "No competent evidence" means that the Commission's decision is "so devoid of evidentiary support that it can only be explained as an arbitrary and capricious exercise of authority." *Id.* (quoting *Bd. of Cty. Comm'rs v. O'Dell,* 920 P.2d 48, 50 (Colo. 1996)); *accord Turney v. Civil Serv. Comm'n,* 222 P.3d 343, 347 (Colo. App. 2009). "An action by an administrative [body] is not arbitrary or an abuse of discretion when the reasonableness of the [body's] action is open to a fair difference of opinion, or when there is room for more than one opinion." *Khelik v. City & Cty. of Denver,* 2016 COA 55, ¶ 13. Because we are not the fact finder, we "cannot weigh the evidence or substitute our own judgment for that of the

---

[5] Under this standard, the appropriate consideration for an appellate court is whether there is sufficient evidentiary support in the record for the administrative body's decision, not whether there is adequate evidence to support the decision of the district court. *Ross v. Fire & Police Pension Ass'n,* 713 P.2d 1304, 1309 (Colo. 1986).

[administrative body]." *Kruse v. Town of Castle Rock*, 192 P.3d 591, 601 (Colo. App. 2008).[6]

B. The Commission's Video Exception is Contrary to Law

¶ 17    Officer Johnson contends that the Commission abused its discretion in refusing to defer to several of the hearing officer's findings of evidentiary fact based on the "video exception." In a prior case, *In re Sparks & Murr*, Nos. 11 CSC03A-2 & 11 CSC04A-2, slip op. at 23-24 (Civil Serv. Comm'n City & Cty. of Denver Dec. 9, 2013), the Commission created the video exception. The Commission described the video exception as follows: "We believe statements an officer makes in direct contradiction to objectively verifiable facts in an otherwise authenticated video of the scene are not entitled to a presumption of truth." *Id.* at 24. Officer Johnson argues that the Commission was without the authority to create

_____

[6] We recognize that in criminal cases involving suppression of evidence issues, this court may review video evidence de novo. *See People v. Ramadon*, 2013 CO 68, ¶ 21(When an interrogation is video or audio recorded and there are no disputed facts outside the recording pertinent to the suppression ruling, we are in the same position as the trial court in deciding the suppression issue.); *People v. Springsted*, 2016 COA 188, ¶ 16 (same). However, our standard of review is not at issue in this appeal. As we explain below, the Denver City Charter places express limits on the Commission's standard of review that do not apply to state courts.

10

this exception under Denver Civil Service Commission Rule 12, section 11(D)(1). He reasons that the video "was not new material evidence," one of the few exceptions to the rule that the Commission is bound by a hearing officer's findings of historical facts.

### 1. The Commission's Findings

¶ 18 After reviewing the hearing evidence, the Commission found that the hearing officer had abused her discretion in finding no credible evidence to support the discipline. It concluded that the HALO video alone, which captured the parties' conduct for the four minutes leading up to Officer Johnson's use of force, provided ample evidence to show that the degree of force used was not commensurate with the threat posed and supported the Department's imposition of discipline. Relying on the video exception, it found that the video contradicted Officer Johnson's claims that

- Brandon and the others had made aggressive and threatening movements towards him and postured themselves aggressively;

- Brandon had puffed his chest out in a defensive manner;

- Brandon and the others had "encircled" him;

11

- Brandon had used his hands in a threatening manner; and

- he was concerned that Brandon had a weapon in his pocket.

¶ 19    The Commission found the video showed that Officer Johnson never acted concerned with anyone's behavior, that no one acted in a threatening or aggressive manner toward Officer Johnson, and that for no apparent reason, Officer Johnson suddenly moved in front of Brandon and shoved him to the ground.



HALO Video at 4:19.



HALO Video at 4:20.



HALO Video at 4:21.



HALO Video at 4:22.

¶ 20    Relying in part on the video exception, and its own findings of the circumstances confronting Officer Johnson (rather than accepting the hearing officer's findings of fact), the Commission concluded that the hearing officer erred in reversing the MOS's decision and that ample evidence supported the imposition of discipline.

2. Commission's Standard of Review

¶ 21    The Commission's review of a hearing officer's findings and conclusions is governed by Charter section 9.4.15 and Denver Civil

Service Commission Rule 12, section 11(J)(5).[7]  The Charter

provides the following:

> In deciding the appeal, the Commission shall
> rely only upon the evidence presented to the
> Hearing Officer except when the appeal is
> based on new and material evidence.  All
> factual findings by the Hearing Officer shall be
> binding on the Commission, and the
> Commission may not resolve disputed issues
> of fact.

Charter § 9.4.15(F).

¶ 22     The Civil Service Rules provide that

> [a]ll findings of evidentiary fact by the Hearing
> Officer shall be binding on the Commissioners.
> The Commissioners may not resolve disputed
> issues of fact.

Denver Civil Serv. Comm'n Rule 12, § 11(J)(5).

---

[7] We recognize that *Nixon v. City & Cty. of Denver*, 2014 COA 172, ¶ 25, applied the standard of review found in Colorado's Administrative Procedure Act, section 24-2-105(15)(b), C.R.S. 2014, in an appeal involving the Commission's decision to uphold the termination of a Denver police officer.  But *Nixon* is distinguishable. *Nixon* did not discuss the issue of *whether* the Administrative Procedure Act should be applied to the Commission's decisions; the division simply assumed that it was "bound . . . by section 24-4-105(15)(b) . . . ."  But that issue has taken center stage in this case, and we have decided that the Administrative Procedure Act does not apply.  *See* § 24-4-107, C.R.S. 2017 ("[The APA] applies to every agency of the *state* having *statewide* jurisdiction . . . ." (emphasis added)).

15

¶ 23    Additionally, Charter section 9.4.15(F), on which Officer Johnson relies, provides that the Commission's review of a hearing officer's decision is limited to: (1) considering new and material evidence; (2) deciding whether the hearing officer erroneously interpreted departmental or civil service rules; (3) weighing policy considerations that may have an effect beyond the case at hand; and (4) deciding whether the discipline affirmed or imposed is inconsistent with the discipline other officers received under similar circumstances.[8]

¶ 24    We interpret municipal regulations as we do statutes. *See Marshall*, ¶ 12 ("[W]hen interpreting a [municipal] charter courts apply the principles of statutory interpretation."). We apply the plain meaning of the language as written and may not add language that does not exist. *See Williams v. Dep't of Pub. Safety*, 2015 COA 180, ¶ 85 ("[W]hen interpreting a statute, 'we must accept the General Assembly's choice of language and not add or imply words

---

[8] Rule 12 of the Denver Civil Service Commission provides the same bases for appeal and grounds for the Commission's review except for policy considerations that may have an effect beyond the case at hand. Denver Civil Serv. Comm'n Rule 12, § 11(D).

that simply are not there.'" (quoting *People v. Benavidez*, 222 P.3d 391, 393-94 (Colo. App. 2009))).

### 3. Application of the Standard of Review

¶ 25    Both the Charter's and the Rules' standards of review govern the Commission's review of the MOS's order and the hearing officer's findings.  They require the Commission to defer to the hearing officer's evidentiary findings of fact, and they preclude the Commission from resolving disputed issues of fact.  They say nothing about deferring to a hearing officer's findings of fact unless those facts are contradicted by authenticated video evidence.  While a video exception to the standard of review may make eminent sense in today's world, this decision is for the Denver voters to make, not the Commission or the courts.  *See* Colo. Const. art. XX, § 5 ("The citizens of the city and county of Denver shall have the exclusive power to amend their charter . . . ."); Charter § 9.3.4 ("The Commission shall have the power to make and enforce rules consistent with its rule-making process (which shall include a requirement that proposed rules be posted prior to adoption), and its Charter-mandated duties, powers, and responsibilities.").

17

¶ 26    The Commission simply does not have the authority to amend the Charter's standard of review.  Therefore, we conclude that the video exception is contrary to law and invalid, and that both the Commission and the district court erred in relying on it to reverse the hearing officer's decision.[9]

### C. The Department's Use of Force Standard, Not the Fourth Amendment, Applies to an Officer's Use of Force

¶ 27    The Commission concluded that the hearing officer had clearly erred in finding a "deadly force/non-deadly force dichotomy" from two United States Supreme Court cases, and that the Department was free to establish more stringent standards than the constitutional baselines articulated in those cases.  We agree.

¶ 28    The Charter authorizes the Department to promulgate and enforce rules governing the conduct of law enforcement officers.  Charter § 9.4.13.  The police department's RR-306 states, "[o]fficers shall not use inappropriate force in making an arrest or in dealing

---

[9] We also reject Officer Johnson's contention that the Commission violated Charter section 9.4.15(F) because the Commission specifically addressed the hearing officer's erroneous interpretation of the use of force policy under section 9.4.15(F)(a) and the public's perception of its officers' use of force under Charter section 9.4.15(F)(c).  He does not cite nor have we found any authority requiring findings under all four sections of section 9.4.15(F)(a)-(d).

18

with a prisoner or any other person."  The Denver Police Department Operations Manual (OMS) sets forth the Department's use of force policy.  As relevant here, it provides:

- "[A]n officer shall use only that degree of force *necessary and reasonable under the circumstances*."  OMS § 105.01(1)(a), https://perma.cc/SVG2-L743 (emphasis added).

- "Officers should ensure that they do not engage in *unreasonable* actions that precipitate the use of force as a result of tactical, strategic, or procedural errors."  *Id.* (emphasis added).

- "The reasonableness inquiry in an excessive force case is an objective one; the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them."  *Id.*

- "The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight."  *Id.*

- "Use of force that is not lawful, reasonable and appropriate will not be tolerated." OMS § 105.01(1)(b).

- "The level of force applied must reflect the totality of circumstances surrounding the immediate situation." *Id.*

- "The officer need only select a level of force that is within the range of 'objectively reasonable' options." *Id.*

¶ 29    These provisions establish a standard to be applied in reviewing an officer's use of force: (1) whether the use of force was necessary; and (2) whether the use of force was reasonable. And that determination is informed by the totality of the circumstances surrounding the use of force. OMS § 105.01(4). This provision provides:

> 1.    The reasonableness of an officer's use of force under the Fourth Amendment requires careful attention to the totality of the facts and circumstances known by the officer prior to using force, including:
> a.    The severity of the crime at issue and
> b.    Whether the suspect poses an immediate threat to the safety of the officer(s) or others and
> c.    Whether the suspect is actively resisting arrest or attempting to evade arrest by the flight.

OMS § 105.01(4)(c).

20

¶ 30    First, we agree with the Commission that the Department was free to adopt a policy that applies a more stringent standard than the baseline constitutional standard.  *See Turney*, 222 P.3d at 350 (noting that police departments "may — indeed, they should — impose higher internal standards on their officers than simply not violating state criminal law and avoiding federal damages liability"); *see also Harris v. City of Colorado Springs*, 867 P.2d 217, 219 (Colo. App. 1993) (observing that a police officer is held to a higher standard of conduct because he or she is "a trustee of the public interest, bearing the burden of great and total responsibility to his [or her] public employer" (quoting *Gardner v. Broderick*, 392 U.S. 273, 277 (1968))); *see also Graham*, 490 U.S. at 395 (articulating the constitutional standard and holding that "*all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach").

¶ 31    Second, we also agree with the Commission that the hearing officer erred in finding that the "20/20 hindsight" language created

21

a separate non-deadly force standard and in applying only that standard to the evidence. As is evident from the OMS, this particular language simply qualifies the objectively reasonable standard and instructs a reviewer of the officer's use of force to consider what is objectively reasonable from the perspective of a reasonable officer on the scene, under all the attendant circumstances. Accordingly, the Commission correctly determined that the hearing officer erred in her application of the use of force standard.

### D. Sufficient Evidence Supports the Commission's Decision and the Discipline Imposed

¶ 32    Our conclusion that the video exception constitutes an invalid basis for the Commission to reject the hearing officer's factual findings does not end this case, because we must also decide whether the Commission nevertheless reached the right result for the wrong reasons. *See Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 329 (Colo. App. 2009) (noting that the court of appeals can affirm on any grounds supported by the record), *aff'd*, 252 P.3d 1071 (Colo. 2011); *Rush Creek Sols., Inc. v. Ute Mountain Ute Tribe*, 107

P.3d 402, 406 (Colo. App. 2004) ("[W]e may affirm the trial court's ruling based on any grounds that are supported by the record.").

¶ 33     To answer this question, we must examine whether the hearing officer applied the correct standard of review to the MOS's findings in concluding that "no credible evidence" supported the discipline. We requested supplemental briefing on this issue.

¶ 34     Officer Johnson contends that the hearing officer is only required to defer to the MOS's decisions concerning the Department's policies, and that the hearing officer otherwise finds evidentiary facts de novo. The City agrees that the hearing officer must defer to the MOS's findings concerning department policy, but counters that the hearing officer may only set aside the MOS's factual determinations when "the decision, although supported by the evidence, is contrary to what a reasonable person would conclude from the record as a whole," under Denver Civil Service Commission Rule 12, section 9(B)(1)(c)(i). We agree with the City.

1. Hearing Officer's Standard of Review

¶ 35     A hearing officer may reverse the MOS's decision only when it finds that decision to be "clearly erroneous." Denver Civil Serv.

23

Comm'n Rule 12, § 9(B)(1)(b). The Rule defines "clearly erroneous"

as follows:

> A Departmental Order of Disciplinary Action
> shall be deemed to be "clearly erroneous", in
> whole or in part, in the following
> circumstances:
>
> > (i) The decision, although supported by
> > the evidence, is contrary to what a
> > reasonable person would conclude from
> > the record as a whole;
> >
> > (ii) If the Manager fails to follow the
> > applicable Departmental guidelines, rules
> > or regulations, an applicable matrix or its
> > associated guidelines, and absent such
> > failure the discipline imposed would not
> > have resulted; or
> >
> > (iii) If the Manager otherwise exceeds his
> > authority.

Denver Civil Serv. Comm'n Rule 12, § 9(B)(1)(c).

¶ 36 Moreover, when reviewing the Department's disciplinary

action, the Rule further provides that

> Hearing Officers shall not substitute their
> judgment for that of the Executive Director of
> Safety concerning any policy considerations
> underlying the discipline, to include the
> interpretation of Departmental Rules and
> Regulations, and may only reverse or modify
> the Manager's decision concerning policy
> considerations when it is shown to be clearly
> erroneous. Hearing Officers shall not

24

> substitute their judgment for that of the Executive Director of Safety in determining the appropriate level of penalty to be imposed for a sustained violation, and may only modify the disciplinary penalty imposed when it is shown to be clearly erroneous.

Denver Civil Serv. Comm'n Rule 12, § 9(B)(1)(a).

¶ 37 Although the Charter and the Rules are far from clear regarding when a hearing officer may set aside the discipline ordered by the Department (through the MOS), it is apparent that this is not a de novo hearing in which no deference is given to the MOS's findings and imposition of discipline. *See, e.g., Tilley v. Indus. Claim Appeals Office*, 924 P.2d 1173, 1177 (Colo. App. 1996) ("In unemployment proceedings, the hearing officers are required to assess the evidence independently and reach their own conclusions concerning the reason for the separation from employment, the probative value of the evidence, the credibility of the witnesses, and the resolution of any conflicting testimony."); *Marlin Oil Co. v. Indus. Comm'n*, 641 P.2d 312, 313 (Colo. App. 1982) ("An administrative appeal in an unemployment compensation case is a review of the case in its entirety, and the hearing is, in effect, a trial de novo.").

¶ 38    As we read the Charter and the Rules, the hearing officer must defer to the MOS's determination of the propriety of the imposition of discipline unless that decision is clearly erroneous.  Under the clearly erroneous standard, a hearing officer may only set aside the discipline imposed when the MOS's decision is contrary to what a reasonable person would conclude from the record as a whole.  Denver Civil Serv. Comm'n Rule 12, § 9(B)(1)(c); *see* Charter § 9.4.15(D) ("In reviewing the disciplinary action, the Hearing Officer shall give due weight to the necessity of the maintaining by the Manager of administrative control of the department.  The Hearing Officer shall review the full record before him or her and shall make written findings, affirming, reversing, or modifying the disciplinary action in whole or in part.").  The MOS must make a prima facie showing in support of its order.  *Marshall*, ¶ 15 (finding that Denver Civil Service Commission Rule 12, section 8(D)(2) requires the Department to present to a hearing officer "sufficient evidence to create a reasonable inference of the correctness of the sustained Rule violation(s)").

¶ 39    The burden of proving that the MOS's discipline order was clearly erroneous rests with the officer seeking the reversal of that

26

order. *See* Denver Civil Serv. Comm'n Rule 12, § 8(D)(3) (explaining that the petitioner shall be considered the proponent of an order seeking the modification or reversal of the discipline imposed); *see also* § 24-4-105(7), C.R.S. 2017 (noting that the proponent of an order shall have the burden of proof).

¶ 40 Viewing the record before the hearing officer, which includes the HALO video, as well as the statements of the various participants in this matter, we cannot conclude that either the MOS failed to present a prima facie case to support the discipline imposed or that his decision was contrary to what a reasonable person would conclude from the record as a whole.

¶ 41 For instance, the undisputed evidence shows that Brandon verbally berated Officer Johnson and refused to leave the area, but no one described him taking physical actions against Officer Johnson until after he was pushed. Officer Johnson told the internal investigators that he decided to "close the gap" between himself and Brandon after telling Brandon he was going to detox. He further admitted that he "got too close" and was "in too deep." He said he needed to create some distance between them and that he shoved Brandon to create that distance. When the investigators

27

asked why he did not create that distance by taking a step back, Officer Johnson responded that he reverted to his training "not to give up ground."

¶ 42    The undisputed evidence further reveals that the nightclub's bouncer was a short distance away from the group, was available to assist Officer Johnson throughout the encounter, and, at one point, approached Officer Johnson to ask whether he needed assistance. Officer Johnson told the internal investigators, "[I] didn't have to call for [police] back-up.  I figured, hey, take care of the situation fast so it doesn't prolong – so it doesn't go longer."  He did not recall whether he considered asking the bouncer for assistance.

¶ 43    Applying the Department's use of force standard to these and the remaining facts, the MOS found that Officer Johnson's decision to "close the gap" was not reasonable or necessary to perform his duties and that it was more reasonable to maintain distance in order to better assess a potential threat.  He further found that it was neither reasonable nor necessary for Officer Johnson to create distance by shoving Brandon when he could have safely stepped back in accordance with departmental policy concerning retreat and repositioning.  And, he noted that the Department's use of force

policy "is more restrictive than the 'objective reasonable' standard." Thus, he also found that Officer Johnson could easily and reasonably have summoned additional assistance.

¶ 44    The hearing officer never considered whether the MOS's decision was clearly erroneous, because she instead found that he had failed to offer "sufficient evidence to create a reasonable inference of the correctness of the sustained Rule violation" — in other words, that he had not established a prima facie case.  She reached this conclusion based on her findings that: (1) Brandon was pushed onto stairs leading up rather than down; (2) no evidence showed that Officer Johnson was angry or impatient; (3) the technique employed by Officer Johnson was a proper arrest control technique; (4) the MOS erroneously considered whether Brandon posed a "credible threat" to officer safety because that was the inapplicable deadly force standard; and (5) the MOS erroneously applied the deadly rather than the non-deadly force standard in reaching his decision.

¶ 45    However, we have already concluded that the MOS properly applied the Department's use of force standard.  We further conclude that the undisputed evidence to which he applied that

29

standard is sufficient to create a reasonable inference in the correctness of the sustained rule violation and that his decision was not clearly erroneous.

¶ 46    The hearing officer improperly substituted her judgment for the MOS's in concluding otherwise, contrary to the standards set forth in the Charter and Denver Civil Service Commission Rule 12.

¶ 47    Under our deferential standard of review, we cannot conclude that the Commission abused its discretion in reversing the hearing officer's decision based on the record as a whole, including the video evidence. While different people may have different reactions to the HALO video, the Charter and accompanying Rules require the hearing officer to defer to the Department's interpretation of its own policies. While the Commission is bound by the hearing officer's evidentiary findings, it reviews for clear error the hearing officer's ultimate conclusions of fact — here whether the hearing officer applied the proper use of force standard and whether competent evidence supported the Department's imposition of discipline, absent the video exception. Thus, while we find legal error in the Commission's reliance on the video exception, we nevertheless conclude that the remaining record before the Commission and the

30

hearing officer supports the Commission's decision and the Department's imposition of discipline.

### III.   Conclusion

¶ 48    The judgment is affirmed.

JUDGE BERNARD and JUDGE BERGER concur.